GOODWIN, Circuit Judge:
The Secretary of Health and Human Services appeals the judgment of the Bankruptcy Appellate Panel reversing the bankruptcy court’s decision in an adversary proceeding brought by debtor Town & Country Home Nursing Services, Inc. (“T & C”). Because we agree with the BAP that the government waived sovereign immunity under 11 U.S.C. § 106(a) by offsetting against T & C’s assets after T & C had filed a Chapter 11 petition, we affirm.
FACTS AND PROCEEDINGS BELOW
A. Statutory and Regulatory Background
T & C is a provider of in-home nursing services under the Medicare Act, 42 U.S.C. §§ 1395-1395ccc. Under the Act, health care providers such as T & C are reimbursed by the government, usually through fiscal intermediaries such as the Blue Cross Association or subcontractors such as Blue *1148 Cross of California (“B.C.C.”)- Congress authorizes the Secretary of Health and Human Services (“the Secretary”) to reimburse providers on an interim provisional basis so that any errors resulting in overpayment or underpayment may be corrected. See 42 U.S.C. § 1395g; 42 C.F.R. § 413.60 (1990).
The intermediary reviews cost reports submitted by the provider and conducts audits when necessary. 42 U.S.C. § 1395h(a). The intermediary then issues a written notice which represents a determination of the total amount of reimbursement due the provider for the fiscal year. 42 C.F.R. § 405.1803. If the final determination is higher than the total of the interim payments, the provider is reimbursed; conversely, if the determination is lower, the provider must refund the overpaid amount to the government. See 42 C.F.R. § 413.64(f).
If a provider disputes the intermediary’s final determination and the amount in controversy exceeds $10,000, the provider can request a hearing before the Provider Reimbursement Review Board within 180 days. 42 U.S.C. § 1395oo (a). The Board’s decision may then be reviewed by the Secretary. After exhausting these procedures, the provider may seek judicial review of the final agency decision. 42 U.S.C. § 1395oo (f)(1).
B. Statement of Facts
T & C has participated in the Medicare program (Part A) since 1970 and, during the time relevant to this case, B.C.C. served as the fiscal intermediary. In late 1984, B.C.C. asserted that T & C had been overpaid approximately $555,000 for fiscal years 1982 through 1984. To resolve the overpayment dispute, T & C executed a promissory note in the amount of $555,539 in February 1985. The note was made payable to the government and required payment in minimum monthly installments of $16,835 plus interest.
From November 1984 through September 1985, B.C.C. offset approximately $21,-000 per month against provider payments otherwise due and payable to T & C. B.C.C.. then discovered that it had made an error in its calculations and determined that the correct amount of overpayment to T & C had been only about $250,000.
On July 19, 1985, T & C filed a petition under Chapter 11 of the Bankruptcy Code. After the petition was filed the government, through B.C.C., continued to offset the amount of overpayment to which it claimed it was entitled and ultimately offset the full amount it claimed was owed by T & C. Approximately $88,700 was deducted from provider payments after T & C filed its Chapter 11 petition.
C. Proceedings Below
In 1986, T & C initiated an adversary proceeding in bankruptcy court against the Secretary, B.C.C., Blue Cross of America, and the Health Care Financing Administration, the section of the Department of Health and Human Services that administers the Medicare program. As amended, the complaint asserted six claims for relief arising under the Bankruptcy Code and state law. The defendants moved to dismiss for lack of jurisdiction and also moved for judgment on the pleadings.
The bankruptcy court denied both motions in its order of January 6, 1988. Concerning those claims arising under various sections of the Bankruptcy Code, the court found that the government had waived sovereign immunity under 11 U.S.C. § 106(c).[1] Subsection (c) provides that sovereign immunity is waived for purposes of declaratory and injunctive relief in actions arising under sections of the Bankruptcy Code that contain trigger terms such as “creditor,” “entity” or “governmental unit.” See United States v. Nordic Village, Inc., — U.S. -, -, 112 S.Ct. 1011, 1015-16, 117 L.Ed.2d 181 (1992). The waiver of sovereign immunity for actions falling within the scope of section 106(c) does not depend on whether the government has filed a claim in bankruptcy court.
*1149 With respect to the two state-law claims contained in the fourth and fifth counts of T & C’s amended complaint, the bankruptcy court considered whether the government had waived sovereign immunity under 11 U.S.C. § 106(a). This subsection waives immunity for claims of the estate arising out of the same transaction and occurrence as a claim of a governmental unit. The bankruptcy court ruled that sovereign immunity under subsection (a) could be waived even if the government had filed no bankruptcy court claim. Thus, it allowed T & C to proceed with Count IV, which alleged breach of the implied covenant of good faith and fair dealing as well as breach of fiduciary duties, and Count V, which alleged intentional or negligent interference with prospective economic advantage and unfair business practices.
On reconsideration, the bankruptcy court modified its initial ruling. The court decided that the waiver of sovereign immunity contained in subsection (a) was predicated on the filing of a formal claim by the government. Accordingly, in its order of March 14, 1988, the court held that it lacked jurisdiction with respect to the fourth and fifth counts because the government had not filed a proof of claim in bankruptcy court and therefore had not waived its immunity.
T & C appealed this dismissal to the Bankruptcy Appellate Panel (“BAP”) pursuant to 28 U.S.C. § 158(b), and the BAP reversed. In re Town & Country Home Nursing Servs., 112 B.R. 329 (Bankr. 9th Cir.1990). The BAP found that the actions of the government — specifically its offsetting against T & C’s assets after T & C filed its bankruptcy petition — constituted a waiver of sovereign immunity with respect to the state-law claims. Id. at 334. The BAP held alternatively that the government, by its downward adjustment of payments to T & C, had effectively filed an “informal proof of claim” and that this action was sufficient to satisfy the requirements of 11 U.S.C. § 106(a). Id. The BAP further ruled that the exhaustion provisions of the Medicare Act and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-2680 (“the FTCA”), have no bearing on T & C’s claims because of the independent grant of jurisdiction to bankruptcy courts set forth in 28 U.S.C. §§ 157 and 1334, as well as the waiver of sovereign immunity contained in 11 U.S.C. § 106. Id. at 334-35.
DISCUSSION
We consider three issues on appeal. First, does the federal government waive sovereign immunity for compulsory counterclaims in bankruptcy court under 11 U.S.C. § 106(a) when it obtains payment from a bankruptcy estate, even though it does not file a formal proof of claim? Second, did the government’s self-help collection efforts constitute an informal proof of claim, thereby waiving sovereign immunity? Third, assuming that-sovereign immunity was waived, does the bankruptcy court lack jurisdiction because the Medicare Act or Federal Tort Claims Act provides the exclusive remedy for T & C’s claims?
Both parties agree that this appeal presents issues of law subject to de novo review. See In re Taylor, 884 F.2d 478, 481 (9th Cir.1989).
A. Waiver of Sovereign Immunity
1. Statutory language
Section 106 of the Bankruptcy Code provides:
(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit’s claim arose.
(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
(1) a provision of this title that contains “creditor,” “entity,” or “govern *1150 mental unit” applies to governmental units; and
(2) a determination by the court of an issue arising under such a provision binds governmental units.
The BAP ruled that a governmental unit may waive sovereign immunity under section 106(a) for state-law counterclaims filed by the estate even when it has filed no formal claim in bankruptcy court. The BAP found that the government, by offsetting against monies owed to T & C, had achieved full satisfaction of its claim from the assets of the T & C estate. It concluded that “[t]he threshold requirement in § 106(a) of the existence of a governmental claim against the debtor is therefore satisfied, thereby waiving sovereign immunity as to claims by the estate against the defendants arising ‘out of the same transaction or occurrence.’ ” 112 B.R. at 334. The BAP did not decide whether the mere existence of a governmental claim would be sufficient to constitute a waiver under subsection (a) because it found that the government’s actions were tantamount to filing a claim which resulted in the recovery of funds. See id. at 334 n. 4.
All parties agree that section 106(a) unambiguously waives sovereign immunity for compulsory counterclaims brought in response to a “claim” by a governmental unit. See Irwin v. Department of Veterans Administration, — U.S. -, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990) (noting that waivers of sovereign immunity must be express rather than implied). When a governmental unit formally invokes the jurisdiction of the bankruptcy court by filing a proof of claim, the government’s exposure to counterclaim liability under section 106(a) is unquestioned. See, e.g., Nordic Village, 112 S.Ct. at 1013; Hoffman v. Connecticut Dep’t of Income Maintenance, 492 U.S. 96, 101, 109 S.Ct. 2818, 2822, 106 L.Ed.2d 76 (1989). The question we must answer here, however, is narrower and apparently is one of first impression — whether the term “claim” as used in section 106(a) encompasses the government’s conduct in extracting post-petition payment from the bankruptcy estate without resort to the proof of claim mechanism.
We begin with the statutory language itself as our starting point for interpreting section 106(a). See Ardestani v. INS, — U.S. -, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991). Conceding that the plain language of section 106(a) does not specify what governmental acts will trigger a waiver of immunity, the Secretary argues that the text makes clear that Congress intended to waive immunity only for compulsory counterclaims (as defined by the Federal Rules of Civil Procedure) brought in response to formal proofs of claim filed by the government in the bankruptcy court. The Secretary argues that the first reference to a “claim” in section 106(a) is to a claim against the governmental unit by the estate and that this reference clearly designates a formal claim filed in bankruptcy court. The second reference to a “claim” in section 106(a) parallels the first and defines the scope of the estate’s claim. Logical inference, the Secretary urges, shows that by “claim” Congress meant a claim filed in bankruptcy court. By its terms, however, subsection (a) refers only to a “claim” and does not differentiate between those that are filed and those that are not. Although subsection (b) refers to a government’s “allowed” claims — claims that have been filed and to which no objection has been raised — subsection (a) makes no such reference. This distinction indicates that subsection (a) waivers do not necessarily require the filing of a formal proof of claim. The Secretary’s interpretation of the plain language of section 106(a) is therefore unpersuasive.
2. Legislative history
The Secretary further contends that the legislative history of section 106(a) demonstrates that a waiver of sovereign immunity hinges on the governmental unit’s filing of a proof of claim in bankruptcy court. The Secretary stresses that the congressional reports explaining the rationale of subsection (a) demonstrate that sovereign immunity is not waived when the debtor or trustee files proof of a government claim; *1151 rather, the governmental unit itself must file such a claim. The following passage is contained in both the House and Senate reports:
“Though this subsection creates a partial waiver of immunity when the governmental unit files a proof of claim, it does not waive immunity if the debtor or trustee, and not the governmental unit, files proof of a governmental unit’s claim....”
H.R.Rep. No. 595, 95th Cong., 1st Sess. 317, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6274; S.Rep. No. 989, 95th Cong., 2d Sess. 29-30, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5815-16. In reliance on this passage, the Secretary argues that Congress intended that even where the government has a right to payment that is injected into the bankruptcy proceeding, immunity is not waived absent the governmental unit’s affirmative decision to file a proof of claim in bankruptcy court.
We are not persuaded by the Secretary’s interpretation of the legislative history. Rather, we read the legislative history to support the BAP’s conclusion that Congress intended subsection (a) to apply in certain circumstances even when the government does not file a formal claim. Significantly, the above-quoted joint explanatory statement was written before the final version of section 106 was drafted. As the BAP recognized, the original draft of subsection (a) expressly required the filing of a proof of claim. See H.R. 8200, 95th Cong., 1st Sess. 324 (1977); S. 2266, 95th Cong., 2d Sess. 313 (1978), reprinted in L. King, Collier on Bankruptcy, App. 3, §§ III, VII (15th ed. 1991). As ultimately enacted, however, that requirement was omitted. The BAP properly focused on the deletion of this language. As a general canon of statutory construction, where the final version of a statute deletes language contained in an earlier draft, a court may presume that the earlier draft is inconsistent with ultimate congressional intentions.
On the basis of this more complete account of the legislative history, the BAP rightly concluded that on the facts of this case a proof of claim need not necessarily be filed to trigger the waiver of sovereign immunity set forth in section 106(a). This result effectuates Congress’s desire to prohibit the government from participating in the distribution of the bankruptcy estate without relinquishing part of its sovereign immunity. See supra, H.R.Rep. No. 595, 95th Cong., 1st Sess. 317, U.S.Code Cong. & Admin.News 6274, (“The governmental unit cannot receive distribution from the estate without subjecting itself to any liability it has to the estate within the confines of a compulsory counterclaim rule. Any other result would be one-sided.”); see also In re OPM Leasing Servs., 21 B.R. 993, 1001-02 (Bankr.S.D.N.Y.1982) (holding that West Virginia waived sovereign immunity by initiating adversary proceeding even though it had not filed a proof of claim); In re Davis, 20 B.R. 519, 520-23 (Bankr.M.D.Ga.1982) (rejecting the contention that “the filing of a proof of claim is a prerequisite for relief against the government” where Farmers Home Administration participated in bankruptcy court proceedings and demanded that trustee abandon certain property).
3. Principles of sovereign immunity
The Secretary also argues that basic principles of federal and state sovereign immunity preclude an expansive reading of section 106. The Secretary maintains that even if we reject his reading of the legislative history of section 106, we must interpret narrowly any waiver of immunity. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983). The Secretary argues that to the extent the provision is ambiguous, the waiver must be narrowly construed to apply only to the filing of formal claims by the government. Waivers of sovereign immunity, however, are not construed as strictly as the Secretary suggests. It is well established that when the federal government waives its immunity, the scope of the waiver is construed to achieve its remedial purpose. As the Supreme Court observed in Block v. Neal, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), “[t]he exemption of the sovereign from suit in *1152 volves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.” Id. at 298, 103 S.Ct. at 1094 (citations omitted); see also Franchise Tax Board v. United States Postal Service, 467 U.S. 512, 521, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984) (instructing that the scope of a waiver of sovereign immunity is ascertained “by reference to congressional policy”); Indian Towing Co. v. United States, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955) (Frankfurter, J.) (holding that a court should not act as “self-constituted guardian of the Treasury [and] import immunity back into a statute designed to limit it”). The language and legislative history of section 106(a) manifest Congress’s desire to waive immunity under circumstances such as those present in this case. The Secretary therefore cannot carry the day by invoking general maxims of judicial policy.
The government next points to Eleventh Amendment jurisprudence to bolster its analysis of congressional intent. Section 106 waives immunity not only for the federal government and its agencies, but also for all “governmental units,” including states and localities. See 11 U.S.C. § 101(27). The Secretary argues that if subsection (a) operated to waive sovereign immunity in cases where a state did not invoke the jurisdiction of the bankruptcy court by filing a formal proof of claim, the subsection would raise problematic questions concerning Congress’s authority to abrogate the Eleventh Amendment. The Secretary suggests that if Congress had intended to abrogate immunity in cases in which a state had not filed a claim in bankruptcy court, it would have done so explicitly. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) (requiring an “unmistakably clear” statement of congressional intent to abrogate the states’ Eleventh Amendment immunity). Asserting that Congress should not be presumed to have created a substantial constitutional question, the Secretary contends that congressional concern with the scope of Eleventh Amendment immunity negates the possibility that section 106 waives sovereign immunity whenever any governmental unit has a right to payment and asserts this right outside of bankruptcy court.[2]
The Secretary’s speculation about congressional concern with Eleventh Amendment abrogation elevates form over substance. As discussed above, the BAP did not hold that the mere existence of a claim by a governmental unit is sufficient to waive immunity under section 106(a). Rather, the BAP held more narrowly that on the facts of this case the government’s self-help in lieu of a claim against assets of the estate was tantamount to filing a claim and therefore effected a waiver of sovereign immunity. We fail to see how this principle, even if applied in the context of counterclaims against state governmental *1153 units, would give rise to Eleventh Amendment difficulties.[3]
The Secretary acknowledges that section 106(a) is invoked when the government seeks distribution from the bankruptcy estate by filing a claim. Here, the government obtained distribution from the estate without ever filing a formal proof of claim. The Secretary is thus put in the precarious position of arguing that whereas the mere filing of a claim is sufficient to waive sovereign immunity, the actual receipt of payment on a claim not formally filed produces no such waiver.
We hold that the government’s actions in enforcing post-petition payment were the functional equivalent of filing a claim and that they were sufficient to waive sovereign immunity under 11 U.S.C. § 106(a). To hold otherwise would enable the government to achieve by self-help what it could not accomplish through the procedures of the bankruptcy court, i.e., retain its immunity while extracting payment from the estate. The government had a choice concerning whether to force distribution from T & C’s assets, and it chose to do so by pursuing post-petition offsets. Congress made the consequences of this action clear in the final language of section 106(a), and the government cannot now ask us to raise a shield of immunity between it and the estate.
B. Informal Proof of Claim
The BAP ruled alternatively that even if section 106 does condition a waiver of sovereign immunity on the filing of a claim, the government nonetheless waived its immunity in this case by asserting an informal proof of claim. We have held that even though no document is filed with the bankruptcy court, an informal proof of claim may arise out of demands against the estate or out of correspondence between a creditor and the trustee or debtor-in-possession which demonstrate an intent on the part of the creditor to assert a claim against the bankruptcy estate. See In re Anderson-Walker Indus., Inc., 798 F.2d 1285, 1287-88 (9th Cir.1986). Relying on Anderson-Walker, the BAP stated:
We conclude that the defendants’ affirmative actions after the bankruptcy filing, namely offsetting their claim against estate assets, and giving notice to the debt- or of such offset, were the equivalent of asserting an informal proof of claim. Implicit in such actions was the assertion of a claim. The offsetting and notice accomplished more than a mere proof of claim, having actually effected collection of the asserted clam. Since the defendants’ action was at least equivalent to the submission of an informal proof of claim, sovereign immunity would be deemed waived even if § 106(a) conditioned the waiver of sovereign immunity on the government’s filing of a proof of claim.
112 B.R. at 334.
The Secretary maintains that the informal proof of claim doctrine was misconstrued by the BAP and has no relevance to this case. Observing that the doctrine was developed as an equitable rule to mitigate the harsh consequences of failing to meet filing deadlines, the Secretary contends that the BAP turned the doctrine on its head and converted it into a trap for unwary creditors. The Secretary asserts that where a creditor subsequently does not pursue a bankruptcy court claim, any demand against the estate has no legal status and therefore does not invoke the court’s jurisdiction. We disagree. The government cannot have it both ways: it cannot obtain post-petition payment from the estate through offsetting and still maintain immunity from suit by electing not to file a formal proof of claim. The Secretary would have us construe the doctrine so as to give the government the luxury of being able to assert an amendable informal proof *1154 of claim, and then wait and see whether it would be more advantageous to file a formal claim and risk exposure to counterclaims or simply to take the money and run with its .immunity intact. Such a holding would vitiate the purpose of section 106(a), which is to prevent a governmental entity from obtaining distribution from the estate without subjecting itself to claims by the debtor arising out of the same transaction or occurrence.
C. Exclusive Remedies
With respect to T & C’s state-law tort and contract claims arising out of the government's setoff of Medicare over-payments, the Secretary contends that these claims would be barred even if the government had waived sovereign immunity in bankruptcy court because T & C’s failure to exhaust administrative remedies under the Medicare Act would have precluded T & C from asserting its state-law claims outside bankruptcy.
The Secretary observes that the Medicare Act bars review of claims arising thereunder until administrative procedures have been exhausted. See 42 U.S.C. 405(h) (made applicable to the Medicare Act by 42 U.S.C. § 1395ii); Daniel Freeman Mem. Hosp. v. Schweiker, 656 F.2d 473, 475-76 (9th Cir.1981).[4] The Secretary argues that no cognizable claim arising under the Medicare Act may be asserted except as a challenge to a final agency decision. The Secretary further contends that even if a tort claim not subject to this exhaustion requirement could be asserted with respect to Medicare reimbursement, such an action could be brought only under the FTCA. The FTCA defines the government’s limited waiver of immunity for tort liability, and the remedies provided in the statute are exclusive. See 28 U.S.C. § 1346(b). The Secretary argues that in defining the limits of the government’s tort liability, Congress established as a jurisdictional prerequisite that tort claims be presented to the appropriate federal agency before being raised in federal court. 28 U.S.C. § 2675(a). The Secretary concludes that this threshold requirement of administrative exhaustion precludes T & C’s claims.
T & C, on the other hand, contends that the bankruptcy court had a separate and distinct basis for exercising jurisdiction because T & C’s counterclaims related to property of the estate, see 28 U.S.C. § 1334(b), and were within the jurisdiction of the bankruptcy court, see 28 U.S.C. § 157(b). As the BAP noted, the courts have divided on this question. Some have held that the exhaustion requirements of statutes such as the FTCA and the Medicare Act bar bankruptcy court review. See, e.g., In re St. Mary Hosp., 123 B.R. 14, 16-18 (E.D.Pa.1991); In re Berger, 16 B.R. 236, 237-38 (Bankr.S.D.Fla.1981). Other courts have held that bankruptcy jurisdiction is not precluded. See, e.g., Ashbrook v. Block, 917 F.2d 918, 921-23 (6th Cir.1990) (holding that section 106(a) mandates an automatic waiver of sovereign immunity and thereby impliedly repeals the FTCA’s exhaustion requirement); In re Shelby County Healthcare Servs., 80 B.R. 555, 559-61 (Bankr.N.D.Ga.1987) (Medicare Act); In re Kenny, 75 B.R. 515, 521 (Bankr.E.D.Mich.1987) (FTCA).
The BAP rejected the Secretary’s arguments and found “the better reasoned position” to be that “where there is an independent basis for bankruptcy court jurisdiction, exhaustion of administrative remedies pursuant to other jurisdictional statutes is not required.” 112 B.R. at 334. We agree.
The Secretary objects to the BAP’s holding on the ground that T & C could not have obtained new remedies for Medicare claims simply by filing a bankruptcy petition. The Secretary claims that, in essence, the BAP created a novel rule that a Medicare-provider in bankruptcy acquires state- *1155 law causes of action unavailable to providers who do not file bankruptcy petitions. The Secretary further argues that under the BAP’s ruling T & C is not required to comply with the jurisdictional prerequisites of the FTCA, a result which the Secretary says vitiates Congress’s intention to limit the government’s tort liability. In this vein, the Secretary urges that a statute governing specific subject matter must trump a broad, general statute unless Congress has explicitly articulated a contrary intent. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987).
Reasoning that the broad grants of jurisdiction found in 28 U.S.C. §§ 157 and 1334 give district courts and bankruptcy courts original and exclusive jurisdiction over actions related to bankruptcy for which they otherwise would not have jurisdiction, the BAP found section 106(a) to be an independent grant of jurisdiction to the bankruptcy court regardless of the applicability of other statutes. The BAP’s conclusions are consistent with our prior decisions. In Kaonohi Ohana, Ltd. v. Sutherland, 873 F.2d 1302 (9th Cir.1989), we stated:
“The district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11,” of the bankruptcy code. 28 U.S.C. § 1334(b).... “The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bank-ruptcy_ An action is related to bankruptcy if the outcome could alter the debtor’s rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon handling and administration of the bankrupt estate.”
Id. at 1306 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir.1984)) (emphasis in original). The Secretary’s argument— that the filing of a bankruptcy petition does not confer federal jurisdiction over claims for which there would otherwise be no jurisdiction — has already been rejected in this circuit.
The Secretary’s argument based on 42 U.S.C. § 405(h) is likewise unpersuasive. Section 405(h) only bars actions under 28 U.S.C. §§ 1331 and 1346; it in no way prohibits an assertion of jurisdiction under section 1334. See, e.g., Shelby County, 80 B.R. at 560. The rationale underlying section 1334’s broad jurisdictional grant over all matters conceivably having an effect on the bankruptcy estate is clear. This section allows a single court to preside over all of the affairs of the estate, which promotes a “eongressionally-endorsed objective: the efficient and expeditious resolution of all matters connected to the bankruptcy estate.” In re Fietz, 852 F.2d 455, 457 (9th Cir.1988) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 43-48, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6004-OS). The language of section 1334(b) grants jurisdiction to the district court, and therefore to the bankruptcy court, over civil proceedings related to bankruptcy and accords with “the intent of Congress to bring all bankruptcy-related litigation within the umbrella of the district court, at least as an initial matter, irrespective of congressional statements to the contrary in the context of other specialized litigation.” 1 L.King, Collier on Bankruptcy, 113.01[l][c][ii], at 3-22 (15th ed. 1991).
In enacting section 106, Congress intended to effect “a limited change from the result that would prevail in the absence of bankruptcy.” S.Rep. No. 989, 95th Cong., 2d Sess. 29, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5815. At the time of the Bankruptcy Code’s passage, Congress was aware that its prior enactments, such as the FTCA, had already prescribed certain conditions for the government’s waiver of sovereign immunity. The legislative history of section 106 indicates that Congress meant to alter this landscape by subjecting the government to an automatic exposure to liability as the price of its participation in the distribution of the bankruptcy estate. See id.
AFFIRMED.

. Section 106 contains a limited waiver of sovereign immunity for “governmental units,” including the United States, its agencies and instru-mentalities, as well as state and local governments. See 11 U.S.C. § 101(27) (defining "governmental unit”).

. To discredit the BAP’s reading of the statute, the Secretary points to dictum in the plurality opinion in Hoffman v. Connecticut Department of Income Maintenance, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In Hoffman, the Court held that in enacting section 106(c) — not section 106(a), which is the focus of this appeal — Congress did not abrogate the Eleventh Amendment immunity of the states. Although Connecticut had potential claims against the debtor and refused to pay the debtor for Medicaid services because of past over-payments, the Court observed in passing that ”[n]either § 106(a) nor § 106(b) provides a basis for petitioner’s actions here, since [Connecticut] did not file a claim." Id. at 101, 109 S.Ct. at 2822.
In Hoffman the bankruptcy trustee relied solely on subsection (c) in bringing a turnover proceeding under section 542(b) and a preference avoidance action under section 547(b) of the Bankruptcy Code. The Court thus had no occasion to consider the issue presented in the instant case.
Similarly, in United States v. Nordic Village, Inc., — U.S. -, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), the Court relied on the reasoning of the Hoffman plurality to hold that section 106(c) does not authorize monetary recovery against the federal government. As in Hoffman, the Court noted in passing that subsections (a) and (b) — which were not at issue in the case— specify a waiver of sovereign immunity when the government has filed a proof of claim. 112 S.Ct. at 1013-16. As in Hoffman, the Court in Nordic Village had no occasion to consider the question raised by this appeal.

. It is well settled that a state may waive its sovereign immunity by affirmatively engaging in a federally regulated activity in which Congress clearly has made waiver of immunity a necessary condition of state participation. See Parden v. Terminal Ry., 377 U.S. 184, 196, 84 S.Ct. 1207, 1215, 12 L.Ed.2d 233 (1964), overruled in part, Welch v. Texas Dep’t of Highways and Transp., 483 U.S. 468, 478, 107 S.Ct. 2941, 2948, 97 L.Ed.2d 389 (1987); Gardner v. New Jersey, 329 U.S. 565, 573-74, 67 S.Ct. 467, 471-72, 91 L.Ed. 504 (1947).

. Section 405(h) provides:
The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.