### In re OPERATION OPEN CITY, INC., Debtor.

### The OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OPERATION OPEN CITY, Plaintiff,

### v.

### The NEW YORK STATE DEPARTMENT OF STATE, Defendant.

### No. 93 Civ. 0816 (PKL).

United States District Court, S.D. New York.

Aug. 22, 1994.

---

**820**

Winthrop Stimson Putnam & Roberts (Glenn E. Siegel, Edward Flanders, Matthew J. Borger, of counsel), New York City, for plaintiff-appellee.

Robert Abrams, Atty. Gen. of State of New York (Frederic L. Lieberman, David S. Cook, of counsel), New York City, for defendant-appellant.

## OPINION AND ORDER

LEISURE, District Judge.

This is an appeal from an order issued on December 14, 1992, as amended December 30, 1992, by the United States Bankruptcy Court for the Southern District of New York. Pursuant to the order, a motion to dismiss based on sovereign immunity made by defendant New York State Department of State ("the State") was denied, and plaintiff Operation Open City, Inc.'s motion for summary judgment was granted. Defendant was ordered to turnover certain disputed funds, previously offset by defendant, to debtor Operation Open City, pursuant to 11 U.S.C. § 542(a). Defendant now appeals the order.

## BACKGROUND

Debtor Operation Open City, Inc. is a non profit organization which rehabilitates residential buildings in New York City. The debtor entered into an agreement with defendant on February 8, 1988, by which the debtor agreed to provide weatherization services to eligible apartment buildings. *See Official Committee of Unsecured Creditors of Operation Open City, Inc. v. New York Dep't of State*, 148 B.R. 184, 186 (Bankr.S.D.N.Y. 1992) (citing Contract 88 DOE/EXXON C007205 ("the contract")). The contract included a setoff provision by which the State could setoff amounts owed to the debtor under the contract against any amounts owed by the debtor under any other agreement. *See id.*

On September 19, 1989, an involuntary bankruptcy proceeding was filed against the debtor under Chapter 7 of the Bankruptcy Code. On October 27, 1989 (the "Petition date"), the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Since this date, the debtor has continued to operate its business pursuant to § 1107 and § 1108 of the Bankruptcy Code.

As of the petition date, the State owed approximately $242,210.00 to the debtor. On or about May 16, 1990, the State sent debtor a check for $57,506.00 as "full and final payment." In making this final payment, the State set off $184,704.00 owed the State by the debtor under related contracts. The setoff was made without first seeking from the bankruptcy court relief from the automatic stay provisions which prohibit recovery of property from the debtor's estate without prior permission of the court.

On January 21, 1992, the Official Committee of Unsecured Creditors of Operation

Open City, Inc. ("the Committee") initiated an adversary proceeding. The Committee sought a judgment ordering the State to return the money setoff (a) pursuant to § 542(a) of the Bankruptcy Code, which requires a turnover of property of the estate improperly withheld as a setoff; (b) pursuant to § 362 of the Code as damages for willful violation of the automatic stay provisions; (c) pursuant to § 553 of the Code, which requires a mutual debt before a setoff is permissible, and (d) pursuant to Article 3–A of the New York Lien Law, New York Lien Law §§ 70–79–a (McKinney 1992), for conversion of trust funds.

On March 17, 1992, the State moved before the bankruptcy court to dismiss the action, claiming that (1) the suit is barred by the Eleventh Amendment; (2) the suit is barred by the statute of limitations; and (3) the funds are not subject to turnover since they are not property of the debtor's estate.

On April 17, 1992, the Committee cross-moved for summary judgment claiming that (a) the State had waived its immunity pursuant to 11 U.S.C. § 106(a); (b) the statute of limitations had not run under the turnover provisions of the Code; and (c) that the disputed funds are property of the estate subject to recovery by the debtor. On June 16, 1992, the debtor joined the adversary proceeding pursuant to Fed.R.Bankr.P. 7020 and filed its own cross-motion requesting summary judgment and opposing the State's motion to dismiss.

On December 14, 1992, the Bankruptcy Court for the Southern District of New York entered a Memorandum Decision granting plaintiff's motion for summary judgment and denying defendant's motion to dismiss. The court entered an order on December 29, 1992, as amended January 8, 1993, requiring the State to turn over $184,704.00.[1] Also on January 8, 1993, the State filed a notice of appeal.

## DISCUSSION

### A. Applicable Standard of Review

This Court has jurisdiction to hear this appeal from the order of the Honorable Bur-

ton R. Lifland, United States Bankruptcy Judge, Southern District of New York, dated February 1, 1993, pursuant to 28 U.S.C. § 158. The applicable standard of review is provided by Rule 8013 of the Federal Rules of Bankruptcy Procedure, which directs that the bankruptcy court's findings of fact may not be set aside unless they are shown to be clearly erroneous. Fed.R.Bankr.P. 8013; *see also In re Manville Forest Products Corp.*, 896 F.2d 1384, 1388 (2d Cir.1990) ("We will reverse the bankruptcy court only if we are 'left with the definite and firm conviction that a mistake has been committed.'") (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

■ A bankruptcy court's legal conclusions are generally subject to a *de novo* review by the reviewing court. *See In re Maxwell Newspapers, Inc.*, 981 F.2d 85, 89 (2d Cir.1992) (citations omitted); *see also, In re Ionosphere Clubs*, 922 F.2d 984, 988–89 (2d Cir.1990), *cert. denied sub nom., Air Line Pilots Ass'n, Int'l v. Shugrue*, —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); *In re Fugazy Express*, 124 B.R. 426 (S.D.N.Y. 1991) (Grant of summary judgment by bankruptcy court is subject to *de novo* review in district court), *appeal dismissed* 982 F.2d 769 (2d Cir.1992).

### B. Doctrine of Laches

■ The State argues that this action is barred by the doctrine of laches. However, as plaintiff has correctly noted, this Court cannot review a doctrine of laches defense where it is raised for the first time on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("It is the general rule ... that a federal appellate court does not consider an issue not passed upon below.") (citing *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)); *Greene v. United States*, 13 F.3d 577, 586 (2d Cir.1994); *Camp, Dresser & McKee, Inc. v. Technical Design Assoc., Inc.*, 937 F.2d 840, 843 (2d Cir.1991) (failure to raise statute of limitations defense at trial

---

1. After a significant delay, the State turned over the dispute funds in September of 1993.

level constitutes a waiver and cannot be reviewed on appeal).

Deference to this rule is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce." *Singleton,* 428 U.S. at 120, 96 S.Ct. at 2877 (quoting *Hormel,* 312 U.S. at 556, 61 S.Ct. at 721). Accordingly, this issue will not be considered by the Court.

### C. *Waiver of Sovereign Immunity*

█ Defendant also contends that this action is barred by the Eleventh Amendment. The Eleventh Amendment of the Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI. However, a federal court may properly exercise jurisdiction (a) where Congress has abrogated a state's immunity or (b) where a state has waived its immunity. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *In re 995 Fifth Ave. Assoc., L.P.,* 963 F.2d 503 (2d Cir.1992). In order to be valid, Congressional abrogation of immunity must satisfy two requirements. First, Congress' intent to abrogate immunity must be "unmistakably clear." *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 7, 109 S.Ct. 2273, 2277, 105 L.Ed.2d 1 (1989) (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). Second, the constitutional provision pursuant to which Congress enacts a statutory scheme allowing for abrogation must confer on Congress the power to override the Eleventh Amendment. *See Union Gas,* 491 U.S. at 13–23, 109 S.Ct. at 2280–86.

█ In contrast to an abrogation of immunity, waiver of state immunity is effected not through an act of Congress but rather through an affirmative activity of the state itself. *See Port Auth. Trans–Hudson Corp.*

*v. Feeney,* 495 U.S. 299, 307–09, 110 S.Ct. 1868, 1873–75, 109 L.Ed.2d 264 (1990). A state's participation in litigation or a state's consent to be sued are both examples of such affirmative activity. *See 995 Fifth Ave.,* 963 F.2d at 507.

█ Section 106(a) of the Bankruptcy Code, as the plain language of the statute indicates, provides for a limited waiver of state immunity and not an abrogation. *See United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *995 Fifth Avenue,* 963 F.2d at 507; *Profilet v. United States (In re Johnston),* 163 B.R. 890 (S.D.Fla.1993); *In re Gribben,* 158 B.R. 920 (S.D.N.Y.1993). Section 106(a) specifies the affirmative activity of a state which will trigger a waiver of its immunity:

A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

11 U.S.C. § 106(a). This statute is enacted pursuant to Congress' power under the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4. The fact that the activity constituting a waiver is specified and embodied in a statute does not convert a scheme of waiver into one of abrogation. *See 995 Fifth Avenue,* 963 F.2d at 507.

█ Since 11 U.S.C. § 106(a) provides for a waiver of sovereign immunity and not abrogation, the Court must determine whether the State's acts constitute a waiver under § 106(a). *See 995 Fifth Avenue,* 963 F.2d at 507 (finding § 106(a) provides for waiver not abrogation). The State contends that the language of the provision requires a formal filing of a proof of claim before a sovereign's immunity is deemed waived. This Court disagrees.

Bankruptcy courts have repeatedly held that filing a proof of claim is not necessarily required to trigger a waiver of a state's immunity under § 106(a). *See In re Gribben,* 158 B.R. 920, 923 (S.D.N.Y.1993) ("the statute provides no support for the proposi-

tion that the Government's claim must have been filed as a proof of claim") (citing *Sullivan v. Town & Country Home Nursing Services, Inc.*, 963 F.2d 1146 (9th Cir.1992) (holding that requiring a formal filing of a proof of claim for waiver where government has setoff funds would "vitiate the purpose of section 106(a)")); *see also In re Johnston*, 163 B.R. at 893 ("if a *claim exists*, sovereign immunity disappears under § 106(a) and this is probably enough") (emphasis added); *Mims v. United States (In re Craftsmen, Inc.)*, 163 B.R. 88, 92 (Bankr.N.D.Tex.1993) ("mere existence of a government claim permits waiver of immunity pursuant to § 106(a)"); *Rakozy v. Diversified Turnkey Construction Co.*, 145 B.R. 661 (Bankr.D.Idaho 1992) ("no proof of claim is required by the language of section 106(a)").

Despite these authorities, the State insists that a formal proof of claim must be filed in order to trigger a waiver. In advancing its position, the State relies on *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In *Hoffman*, however, the Court was concerned only with the interpretation of § 106(c), and not with sections (a) or (b). The Court mentioned § 106(a) only in so far as it concluded that it did not provide a basis for the petitioner's action. Thus the Court did not have the opportunity to consider whether a state's affirmative act of setting off funds in collection of a debt could constitute a waiver under § 106(a). *See Town & Country*, 963 F.2d at 1152 n. 2.

■ The weight of authority supports the conclusion reached by the bankruptcy court that § 106(a) does not require a formal proof of claim, as does the statutory language of § 106(a). Section 106(a) refers only to "claims" while § 106(b) refers to "allowable claims." It is well established that " '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclu-

sion.' " *INS v. Cardoza–Fonesca*, 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983)). Thus although the word "claim" does not specify what actions will trigger a waiver of immunity, the difference in wording between sections (a) and (b) suggests that waivers under section (a) "do not necessarily require the filing of a formal proof of claim." *Town & Country*, 963 F.2d at 1150; *see also In re Gribben*, 158 B.R. at 923.[2]

■ As the Ninth Circuit found, after a thorough review of the scope of § 106(a), the legislative history of § 106(a) also points to a broader reading of "claim" than the State urges herein. Before the final version of § 106(a) was adopted, the text of the statute read as follows:

(a) A governmental unit *that files a proof of claim* under section 501 of this title is deemed to have waived sovereign immunity . . .

H.R. 8200, 95th Cong. 1st Sess. 324 (1977); S. 2266, 95th Cong., 2nd Sess. 313 (1978) (emphasis added). However, the language "files a proof of claim" was omitted from the final version. As the Supreme Court has stated, "[w]here Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." *Russello*, 464 U.S. at 23–24, 104 S.Ct. at 301; *see Town & Country*, 963 F.2d at 1151; *see also Nachman Corp. v. Pension Ben. Guaranty Corporation*, 446 U.S. 359, 392–93, 100 S.Ct. 1723, 1741–42, 64 L.Ed.2d 354 (1980) ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.") Thus the deletion of the language referring to filing a claim is critical, and the most palatable construction of § 106(a) is that Congress intended "claims" be construed broadly enough to include more than just formally

---

**2.** This interpretation of the word "claim" is consistent with other sections of the code. Section 101(5) of the Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured . . ." 11 U.S.C. § 101(5); *see In re Gribben*, 158 B.R. at 923.

filed claims. *See Town & Country,* 963 F.2d at 1151.[3]

Finally, this Court agrees with the policy considerations raised by the Ninth Circuit in *Town & Country.* There the court concluded that to hold that a state waives its immunity only by filing a formal proof of claim and not by taking a setoff from the debtor's estate would "vitiate the purpose of section 106(a), which is to prevent a governmental entity from obtaining distribution from the estate without subjecting itself to claims by the debtor arising out of the same transaction or occurrence." *Town & Country,* 963 F.2d at 1154. The reading of § 106(a) advanced by the State suggests, on the one hand, that by filing a proof of claim, a government waives its immunity but, on the other hand, that by taking a setoff, a government can receive actual payment on this claim yet still retain its immunity. Such a reading would allow a governmental entity to circumvent the authority of a bankruptcy court and help itself to the proceeds of a bankrupt's estate. *See Town & Country,* 963 F.2d at 1153 ("To hold otherwise would enable the government to achieve through self-help what it could not accomplish through the procedures of the bankruptcy court, *i.e.,* retain its immunity while extracting payment from the estate."); *In re Gribben,* 158 B.R. at 923. Because this construction would undermine the central role of a bankruptcy court in distributing the assets of the bankrupt's estate, this Court concludes that taking a setoff without first requesting relief from the automatic stay provision of § 362 pursuant to § 553 constitutes a waiver of a state's immunity.

## D. *The Disputed Funds*

The State also endeavors to argue that the monies retained are not property of the debtor's estate and thus their distribution is not a matter within the jurisdiction of this Court. Generally, a bankrupt's estate does not include "property of others which the debtor has some minor interest such as a lien or bare legal title." *In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (2d Cir. 1989) (quoting *United States v. Whiting Pools,* 462 U.S. 198, 204 n. 8, 103 S.Ct. 2309, 2313 n. 8, 76 L.Ed.2d 515 (1983)). However, while the funds are not the property of the debtor, the debtor has more than a minor interest in the funds. Pursuant to Article 3–A of the New York Lien Law, these funds constitute funds which are held in constructive trust for the benefit of third parties. It is axiomatic that the distribution of such funds are core functions within the jurisdiction of the bankruptcy court. *See In re Johnson,* 960 F.2d 396, 402 (4th Cir.1992) (finding distribution of funds held in constructive trust "are intimately tied to the traditional bankruptcy functions and estate, and, therefore, are core matters within the clear jurisdiction of the bankruptcy court"); *Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962, 96–68 (5th Cir.1983); *In re Rosenshein,* 136 B.R. 368 (Bankr.S.D.N.Y. 1992).

Rather than relying on the authority of the bankruptcy court to determine the appropriate distribution of the funds of the bankrupt, the State chose to setoff monies owed to it by the debtor. Generally, it is indisputable that before attempting to declare the right to a setoff under § 553, a creditor must first obtain relief from the

**3.** The State also argues that after the Second Circuit's decision in *995 Fifth Avenue,* only a formally filed proof of claim can satisfy the requirements for a waiver under § 106(a). The State's argument hangs exclusively on footnote 1 of that opinion. In footnote 1, the Court opined that it did not believe that Congress's intent would be rendered unclear by the fact that the statute does not mention the filing of a proof of claim, since the only reasonable construction of § 106(a) is that a waiver will arise only if a claim is actually filed. While the Court in *995 Fifth Avenue,* alluded to actual filing, the Court never directly confronted the question posed herein, *i.e.,* whether an informal proof of claim could

constitute a waiver of immunity. Accordingly, this Court is not constrained by the dicta contained in Footnote 1 of *995 Fifth Avenue,* especially in light of the statutory language and legislative history, discussed *supra,* which support this conclusion, and in light of the fact that this question was specifically addressed by a number of other courts, which have answered the question in the affirmative. *See Boldman v. United States (In re Boldman),* 148 B.R. 874, 877 (Bankr.C.D.Ill.1993) ("All that is necessary is that the governmental unit possess a claim, not that it assert it in any fashion."); *see In re Gribben,* 158 B.R. 920 (S.D.N.Y.1993); *In re Johnston,* 163 B.R. 890 (S.D.Fla.1993).

automatic stay established by § 362 of the Bankruptcy Code. *See Small Business Administration v. Rinehart*, 887 F.2d 165, 168 (8th Cir.1989); *In re Ionosphere Clubs, Inc.*, 164 B.R. 839, 843–44 (Bankr.S.D.N.Y.1994); *In re Blava In–Line, Inc.*, 133 B.R. 33, 36–37 (Bankr.S.D.N.Y.1991). By withholding money when making full and final payment to the debtor, by way of the setoff, the State ran afoul of § 362(a)(7) of the Bankruptcy Code.[4]

The State contends that debtor Operation Open City acquiesced in the retention of the funds and thus there was no violation of the automatic stay. This argument is unpersuasive because, in bankruptcy law, "even if a setoff is authorized by the parties, such setoff is expressly forbidden after a debtor files a bankruptcy petition." *In re Blava, Inc.*, 133 B.R. at 37; *see also Garver v. Bassford*, 753 F.2d 976, 977 (11th Cir.1985) (citing *Susquehanna Chemical Corp. v. Producers Bank & Trust Co.*, 174 F.2d 783, 787 (3d Cir.1949)).

 Therefore, because the State violated the automatic stay provision, the setoff was void. *See In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir.1992) (Indeed so central is the § 362 stay to an orderly bankruptcy process that " 'actions taken in violation of the stay are void and without effect.' ") (quoting *48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir.1987) (quoting 2 Lawrence P. King, *Collier on Bankruptcy* § 362.11 (15th ed. 1987))). Thus the bankruptcy court correctly ordered the turnover of the amount improperly setoff by the State.

Finally, the State claims that the ordered turnover constitutes an improper award of damages under 11 U.S.C. § 362(h). The State is correct in concluding that any award of damages under this provision would be inappropriate in this action, because damages under § 362(h) are available only for natural persons. *See In re Chateaugay Corp.*, 920 F.2d 183, 186–87 (2d Cir.1990). However, the ordered turnover was not an award of damages. The ordered turnover was designed to effect a consolidation of the bank-

rupt's estate. As the amount ordered mirrors the amount impermissibly setoff by the State, there is no evidence in the record that the order was intended as an award of damages. Accordingly, the bankruptcy court's decision is affirmed.

## CONCLUSION

For the reasons stated above, the decision of the bankruptcy court is hereby affirmed.

**SO ORDERED.**

---

4. 11 U.S.C. § 362(a)(7) provides in relevant part: (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 ... operates as a stay, applicable to all entities, of—

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title [11 U.S.C. §§ 101 et seq.] against any claim against the debtor ...