In re R & W ENTERPRISES, Debtor.

UNITED STATES of America, FOR the USE AND BENEFIT OF Matt Langley BELL, as the Duly Elected Tax Collector in and for Escambia County, Florida, Plaintiff,

v.

M. Alan RHODEY, Trustee, and Fidelity and Deposit Company of Maryland, Defendants and Third Party Plaintiffs,

v.

UNITED STATES of America, INTERNAL REVENUE SERVICE, Third Party Defendant.

Bankruptcy No. 88–04172.
Adv. No. 93–08024.

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Sept. 12, 1994.

Order Vacating Decision in Part on Rehearing Dec. 15, 1994.

Philip Bates, Pensacola, FL, for plaintiff.

Cory Peterson, Pensacola, FL, for defendants and third party plaintiffs.

Carol Koehler Ide, U.S. Dept. of Justice, Washington, DC, for third party defendant.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

BENJAMIN COHEN, Bankruptcy Judge.

This adversary proceeding involves the extremely serious matter of a complaint against a trustee on his bond. On April 9, 1990 the Chapter 7 Trustee of R & S Enterprises submitted a Request to Close Case ("Proposed Distribution") to the U.S. Trustee. The U.S. Trustee reviewed and approved the Proposed Distribution and filed it with the Court. Based on the Trustee's proposal and on the U.S. Trustee's approval of the propos-

al, an Order Directing Disbursement of Funds ("Order of Distribution") was entered on April 9, 1991. In conformity with that order, the Trustee made his distribution which is the subject of this adversary proceeding.[1] On July 3, 1991, after the distribution was made, the U.S. Trustee filed his Certification of the United States Trustee ("Certification") that he had reviewed the case and that the estate had been fully administered. Based on that review and Certification, an Order Approving Account, Discharging Trustee, and Closing Estate was entered on July 5, 1991. On April 1, 1993 the Plaintiff filed a Motion to Reopen the case contending that the original distribution was incorrect and asked that the Plaintiff be allowed to file a complaint against the Trustee and his bonding company. Contemporaneously with the Motion to Reopen, the Plaintiff did file an adversary proceeding complaint against the Trustee and his bonding company. An order granting the Motion to Reopen was entered on April 13, 1991 and the complaint was allowed.

The substantive issues of this case are relatively simple. The procedural issues raised by the parties are quite difficult.

Two complaints are now pending before this Court. The first is the complaint of Escambia County, Florida against Mr. M. Alan Rhodey, the Chapter 7 Trustee of R & W Enterprises, and against the Fidelity and Deposit Company of Maryland, the bonding company providing blanket bond coverage for the Chapter 7 trustees of the Northern District of Florida.[2] In its complaint the County seeks payment for 1987 tangible personal property taxes of $8,137.59, and 1988 tangible personal property taxes of $7,594.79.[3] The County contends the 1987

---

1. All claims senior to the claims now in dispute were paid prior to distribution. In his distribution the Trustee paid the clerk's special charges of $488.50, Trustee fees and expenses of $2,685.60, and $1,640.00 to himself as attorney for the Trustee. The amount remaining, $78,705.83 was paid to the IRS.

2. Fidelity and Deposit Company of Maryland is not represented separately in this action and has not made a separate appearance. Counsel for the Trustee advised the Court that the bonding

company's positions are the same as the Trustee's.

3. Although the County recites both tax year amounts in its complaint, it concedes that it is not entitled to the 1988 taxes under the theory that although the taxes were assessed as of January 1, 1988, the taxes did not become choate because they were not billed until after an IRS tax claim became choate. *See, United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). Consequently, the IRS claim takes priority over the County's 1988 taxes, and

taxes were due when the Trustee made his distribution in this case, and contends that the 1987 taxes had a greater priority than those paid, namely those of the IRS, the only non-administrative creditor sharing in the distribution. The Trustee contends that his distribution was correct and that the County was not entitled to share in the distribution.

The second action is a complaint by the Trustee Mr. Rhodey, as a third party plaintiff against the Internal Revenue Service, as a third party defendant. As a backup position, the Trustee seeks to recover funds he distributed to the IRS and contends that if the County is entitled to the personal property taxes, then the funds from which those taxes should be paid are funds he distributed to the IRS, not from funds based on his bond coverage. The IRS contends that both the County's complaint and the Trustee's complaint are untimely, but agrees with the County that the County should have received a distribution, and that the County's 1987 claim was superior to the claim of the IRS. The IRS disagrees with the Trustee that the funds to satisfy the County's claim should come from the government's distribution. The County just wants its money and agrees with the Trustee that there is an argument that the IRS should be required to repay a portion of the funds it received in an amount sufficient to pay the County's claim.

## A. Findings of Fact

The Court finds that the facts are not in dispute and adopts them from the pleadings and from the arguments of counsel and pursuant to Rule 201 of the Federal Rules of Evidence, takes judicial notice of the records maintained by the Clerk of Court.

This Debtor filed a Chapter 11 petition on March 17, 1988. Prior to conversion of the case, and before the Trustee's appointment, the Debtor in possession asked the Court for permission to sell certain property free and clear of liens. Because this property included personal property on which the County claimed liens, and because those claims were not preserved in the Debtor's request, the County objected to the proposed sale. In response to this objection the debtor in possession filed an Amended Motion to Sell Property Free and Clear of Liens and Other Interest. Notice was given to all creditors. The Court approved the sale on March 13, 1989 which provided, by way of the Amended Motion, that the Debtor was to pay the County $8,137.59 for the 1987 taxes.

In conformity with the terms of its motion and the order approving the sale, the Debtor in possession conducted the sale. The proceeds of the sale were used to pay certain creditors, but for purposes of the matters before this Court, the Debtor in possession satisfied only claims superior to the County and the IRS and did not pay either the County or the IRS.[4]

Both the County and the IRS have filed proofs of claim. The County's for its 1987 taxes of $8,137.59 was filed on July 25, 1988 (claim no. 27). One for the IRS of $156,-854.51 for 1987 FUTA taxes and withholding and FICA taxes for the third and fourth quarters of 1987, all assessed on February 29, 1988, was filed on June 20, 1988 (claim no. 24).

The case was converted to a Chapter 7 case on October 12, 1989, and Mr. Rhodey was appointed Trustee.

On November 8, 1989 the Trustee received $84,590.75 from the counsel for the debtor in possession. This amount represented the remaining proceeds from the Debtor's Chapter 11 sale. The Trustee does not deny that he was aware of the County's claim to a portion of these proceeds.

On April 9, 1990 the Trustee sent his Proposed Distribution to the U.S. Trustee in

the question of the 1987 taxes only is before this Court. Whether the County *was* or *is* entitled to the 1988 taxes, is not an issue before this Court, although both tax amounts represent ad valorem taxes on equipment owned by the Debtor at the time of filing its Chapter 11 petition.

4. The Debtor in possession has not been made a party defendant to either complaint and none of the existing parties have raised the issue of whether the Debtor has any liability for its failure to distribute the proceeds of its sale. Everyone agrees however that if the Debtor had made a distribution pursuant to the March 13, 1991 order, the matter of the Trustee's liability would never have arisen.

Tallahassee, who reviewed it, approved it, and filed it with the Court. Based on the Trustee's proposal and on the U.S. Trustee's approval of the proposal, the Court's Order of Distribution was entered on April 9, 1991. The Trustee then made his distribution which is the subject of this adversary proceeding.[5] Through the distribution the Trustee paid the clerk's special charges of $488.50, trustee's fees and expenses of $2,685.60, and $1,640.00 to himself as attorney for the trustee. The amount remaining was $78,705.83 which was paid to the IRS. On July 3, 1991, after the distribution was made, the U.S. Trustee filed his Certification that he had reviewed the case and that the estate had been fully administered. Based on that review and Certification, the Court entered its Order Approving Account, Discharging Trustee, and Closing Estate on July 5, 1991.

Regarding the Trustee's Proposed Distribution, the County maintains that it did not receive any prior notice or have any opportunity to be heard and contends that it did not discover that it was not included in the Trustee's distribution until June 1991.

On April 1, 1993 the plaintiff filed its Motion to Reopen. An order granting the Motion to Reopen was entered on April 13, 1991 and the complaint filed with the motion was allowed.

In making the decisions necessary to resolve these matters, if this Court accepts the parties' factual explanations of why the County was not paid, the only conclusion this Court can reached is that almost everything that could have gone wrong, did go wrong. The County blames the Trustee and argues that the Trustee should have made his Chapter 7 distribution in accordance with the Court's Order of March 13, 1989 entered during the Chapter 11 proceedings, rather than pursuant to the Court's Order of Distribution entered during the Chapter 7 proceedings. The County also argues that the Clerk of Court failed to schedule a hearing on the Proposed Distribution, failed to send notices to creditors of the proposed Chapter 7 Order of Distribution, and failed to send copies of the Order of Distribution to creditors after that order was entered.[6]

The Internal Revenue Service argues that the Trustee is at fault because the original mistake was made by the Trustee and argues that the County cannot now complain because the County waited far too long to question that mistake.

The Trustee blames the County because it did not object to or appeal the Order Directing Disbursement of Funds and failed to take actions which would have mitigated the circumstances. The County, of course, counters that without notice it could not have known to object or appeal. The Trustee also blames the U.S. Trustee's office contending that the U.S. Trustee's established case auditing procedures failed to discover the mistake, if there were one.

## B. Proceeding

There are three real parties to this matter. Escambia County, Florida, the Trustee, Mr. M. Alan Rhodey, and the Internal Revenue Service. Technically, one matter only is before this Court, that is the Trustee's Motion for Summary Judgment on the County's complaint. The Court's notes from a status conference held on August 31, 1993 explain that there was at least one commitment that another motion for summary judgment would be filed, but there was none. And because the Trustee only has filed a motion for summary judgment, at oral argument on this matter the attorneys expressed some concern about whether both complaints and answers were before the Court on questions of sum-

---

5. When the Trustee made his distribution he did so under the Court's April 9, 1991 Order of Distribution which approved distribution, after payment of administrative claims, to the IRS only. The County argues that the Trustee was bound by the March 13, 1991 order which allowed the Debtor in possession to sell property and that the Trustee should have paid the County pursuant to that order rather than the Order of Distribution.

6. All complaining parties in this case are listed on both the Court's claims register and the case matrix of those to whom notice should be sent. Addressing these contentions of the County is not necessary in order to decide the issues in this case, but for practical reasons, there is reason for this Court to find that there is no evidence that the Clerk of Court failed to perform any of its duties, and this Court so finds.

mary judgment. In response to the Court's questions, all parties after some deliberation, agreed that both matters should be placed before the Court as matters of summary judgment, and that all issues should be decided contemporaneously.

### 1. Issues

There are three substantive issues before this Court. The first is whether the County was initially entitled to payment of its 1987 personal property taxes. The second is whether the County is currently entitled to payment of those same taxes. The third is, if the County is entitled to payment, what is the source of the funds to make those payments.

### 2. Contentions of the Parties

#### (a) First Issue

As to the first issue, between the County and the Trustee, the only question is whether the County's 1987 personal property tax claim was a "tax lien" for purposes of Sections 507 and 725 of the Bankruptcy Code, and therefore entitled to payment before any claim of the IRS. The Trustee contends that the County was required to record its tax lien, and because it did not it is not entitled to payment. The County contends that there is no recording requirement.

There is no controversy between the Trustee and the IRS as to the first issue.

Although there is no controversy between the IRS and the County as to the first issue, the IRS agrees with the County that the County's claim was a tax lien for purposes of bankruptcy and that the County should have been paid either by the Debtor in possession or by the Trustee.

#### (b) Second Issue

As to the second issue, there is no dispute between the Trustee and the County. If the answer to issue one is that the County was entitled to payment, then the Trustee agrees that the County is entitled to payment now. The Trustee did not raise a timeliness issue against the County as did the IRS against the Trustee.

Although there is no controversy between the Trustee and the IRS as to the second issue, in order to protect its position on the third issue the IRS argues that although the County was entitled to payment when the distribution was made, it is no longer entitled because of its failure to object to or timely appeal the Order of Distribution or to seek timely redress under Fed.R.Civ.P. 60(b).

There is no controversy between the County and the IRS, as to the second issue, but again to protect its position as to the third issue, the IRS contends that the County's current demand was not timely and should not now be paid.

#### (c) Third Issue

As to the third issue, between the County and the Trustee, the County contends that the funds to satisfy its claim should come from either the Trustee and his bonding company or from the IRS. The Trustee contends that if the funds are to be paid, they should come from the IRS.

Between the IRS and the Trustee, the IRS contends that the United States has not waived its sovereign immunity to be sued by the Trustee in this adversary proceeding and cannot be forced to disgorge any overpayment it may have received from the distribution, that the Trustee is liable either in a personal or official capacity, and that the time bar in Fed.R.Civ.P. 60(b) prohibits the Trustee, or the County from now collaterally attacking the Court's April 9, 1991 Order of Distribution.

Again there is no controversy between the IRS and the County as to the third issue, but the IRS, in its defense against the Trustee again argues that the County's request was untimely.

### 3. Summary Judgment

Whenever this Court is called upon to balance summary judgment requests, it is charged by the Court of Appeals for the Eleventh Circuit and Fed.R.Civ.P. 56(c) that, "a moving party is entitled to summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (citing *Anderson v. Liberty Lobby*,

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "There is no genuine issue of material fact 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Cox v. Administrator United States Steel,* 17 F.3d 1386, 1396 (11th Cir.1994) (citing *Anderson* 477 U.S. at 248, 106 S.Ct. at 2510), *modified on other grounds,* 30 F.3d 1347 (11th Cir. 1994)). Of most importance to the instant matter is the court of appeals' note in *Bosarge v. United States Department of Education,* 5 F.3d 1414, 1416 n. 4 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2720, 129 L.Ed.2d 845 (1994) which explained that "[a]lthough Bosarge never moved for summary judgment, a district court may enter judgment for a nonmovant." In that same note the court added, "Moreover, the parties agreed that the order on the Defendant's motions for summary judgment would be case dispositive." *Id.* This Court finds that there are no genuine issues as to any material facts in this matter, that summary judgment may be entered for the nonmoving party, and that the parties agree that the motion pending before this Court will be case dispositive.

### C. Conclusions of Law

Bankruptcy courts rely on trustees, debtors, creditors, clerks, U.S. Trustees, and United States Bankruptcy Administrators to notify them if proposed distributions are incorrect. If errors are not timely discovered, a court must rely on the many provisions of the Bankruptcy Code which allow for the correction of such errors.

 There are situations where trustees or other fiduciaries commit acts which submit them and their bonding companies to liability.[7] And there are situations where creditors detrimentally rely on actions of trustees which may cause trustees and their bonding companies to be held accountable.[8] But this case involves none of those circumstances. There has been no theft. There has been no misappropriation of property. There has been no detrimental reliance by a creditor on the Trustee's action. And this Trustee did not personally benefit from his failure to pay the County. Simply, the distribution in this case was wrong, and because everyone recognizes that there was no evil or malicious intent which now taints this distribution, the question of why the distribution was wrong is unimportant. What is important is that the wrongly paid funds are available for redistribution; consequently, based on the facts above and the discussion below, this Court finds that the County is entitled to a present distribution of $8,137.59 for unpaid 1987 tangible personal property taxes and that the funds for this distribution should come from the overpaid, 1991 distribution to the IRS.[9] The equities of this case demand that this

---

7. Both the County and the IRS expressed opinions on what circumstances would produce trustee liability. Many of those situations are summarized in *In re Hutchinson,* 5 F.3d 750 (4th Cir. 1993) at 752–54, and in *In re Sturm,* 121 B.R. 443 (Bankr.E.D.Pa.1990). The Eleventh Circuit Court of Appeals has addressed the question only generally. It did so in *Red Carpet Corp. v. Miller,* 708 F.2d 1576 (11th Cir.1983) at 1578 and has not ruled directly on the question of a bankruptcy trustee's liability. The Trustee here contends that his failure to pay the County was based on his theory that the County had not recorded its lien.

For purposes of this case, deciding what may be the liability of this Trustee is unnecessary to determine the issues in this case. Whether this Trustee was mistaken in his legal judgment, made a factual mistake, was simply negligent or was willful and deliberate in violation of his duties is unimportant in this case where an error was made which, although originating with the Trustee, appears to have slipped through every crack imaginable.

8. If a loss is inevitable, when determining where that loss should fall, consideration should be given to the specific facts of the case as well as certain equitable principals, as did the court in *In re Vick,* 75 B.R. 248 (Bankr.E.D.Va.1987). In that case the creditor receiving an overpayment relied on the payment to reduce the debtor's mortgage on property which was eventually sold. The Chapter 13 trustee asked, after 5 years had passed, that the overpayment be returned. The court found that because the creditors had changed their relationships with the debtor to the creditors' detriment, the trustee's request should be, and was denied.

9. The County should receive no interest here because 22 months passed between the admitted time the County discovered the inaccurate distribution in June 1991 and the time it filed its complaint in April 1993, as compared to the two months that passed between the date of the Order for Distribution, April 9, 1991, and the June 1991 discovery of the inaccurate distribution.

case be reopened, that the claims of the IRS and the County be reconsidered, and that an equitable redistribution be made.

### 1. Reopening the Case

■ While this case was reopened to allow the prosecution of the County's suit against the Trustee, there may be some question of whether the case is open for purposes of the Trustee's suit against the IRS. On this matter, the Trustee must be held to the same standards as was the County when the County filed its Motion to Reopen. Section 350 of the Bankruptcy Code, 11 U.S.C. § 350, allows a case to be reopened "to administer assets, to accord relief to the debtor, or for other cause." [10]

■ There is no formal time limitation on the reopening of a case. Whether to reopen a case is discretionary, but some situations are quite clear. In one strikingly similar to the present case, the Court in *In re Frontier Enterprises, Inc.*, 70 B.R. 356 (Bankr.C.D.Ill.1987) reopened a case some 13 months after the entry of its Distribution Order, to allow the Trustee to pay the claim of the Small Business Administration, which was incorrectly omitted from the Distribution Order. Peat, Marwick, another creditor in the case, asked the court to reconsider the reopening. The court refused the reconsideration stating:

Peat, Marwick argues that in the interest of allowing creditors to be able to rely on the finality of judicial orders, this Court should decline to exercise its discretion to reopen the case. The trustee and the SBA

argue that this Court should reopen to correct a manifest error and to get back the SBA's money which was erroneously distributed. This Court concludes that, based upon the facts presented, a balancing of the equities involved versus the significance of affording finality to creditors mandates a reopening of the case. "Cause" clearly exists here to reopen this case in order to attempt to correct a blatant error in the distribution of the proceeds of this estate.

*In re Frontier Enterprises, Inc.*, at 359. The court wrote further:

It is beyond argument that somebody made a mistake by omitting the SBA from the Distribution Order. It is beyond argument that money that rightfully belonged to the SBA went to creditors other than the SBA. It is hard to imagine more compelling cause for reopening a case. This is not a case for discretionary refusal to reopen.

*Id.* (footnote omitted).

■ This Court finds that cause exists under Fed.R.Bankr.P. 3008 as to the Trustee's suit against the IRS and that this case should be and is opened for that purpose.[11]

### 2. Pleadings

■ This case would have presented a much tidier package had the Trustee, rather than the County, instituted this action in the form of a motion for reconsideration or motion to recover money or property.[12] But the Trustee did not.[13] He filed his complaint

---

**10.** The Advisory Committee Notes to Fed. R.Bankr.P. 3008 explain that reconsideration of the allowance or disallowance of a claim may be sought and granted in accordance with Rule 3008 in cases reopened under section 350 of the Bankruptcy Code.

**11.** Nothing in 11 U.S.C. § 350 restricts the subject matter of actions in a case once that case is reopened. A case may be reopened to "administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

**12.** The facts of this case simply do not lend themselves to procedural hamstringing. Given the overall tenor of the Bankruptcy Code's endeavor for equitable administration of assets for the benefit and fairness of everyone, for this Court to hold that the proper issue has not been

placed before this Court because the Trustee has not provided the proper pleading, would be wrong. One creditor was not paid. One creditor was unjustly enriched. Incorrect information was given to the Court. But fortunately, no one was hurt and this Court has the opportunity to correct a past problem, a rare opportunity indeed. Bankruptcy practice does not allow this Court to dissect the symbiotic sections of the Bankruptcy Code.

**13.** Although the Trustee's action against the IRS was attempted later than ten days after his original answer was filed, he did not seek leave under Fed.R.Bankr.P. 7014 to file the complaint. The IRS did not object to the filing or move to strike the third-party complaint. The IRS did file an answer to the third-party complaint and in the answer asked the Court to dismiss the complaint.

against the IRS coupled with an amended answer about 3 months later.[14] This Court finds, however, that the issues necessary to decide the matters of this case are appropriately and sufficiently before the Court and may now be decided in the present context. The Trustee's complaint may be considered a motion under Fed.R.Civ.P. 60(b) or a complaint to recover the excess dividends paid the IRS. *See* Note 14 below.

### 3. Timeliness

■ Limitations of time apply equally to the Trustee's filing of his complaint as they would if he had filed a "motion to reconsider" or a "motion to recover money or property." The IRS argues that both the County and the Trustee, regardless of what is filed, are barred by the one year limitation of Fed. R.Civ.P. 60(b) which allows a party to seek relief from a final order. This argument is well reasoned, but this Court finds that the limitation does not apply to this matter.

■ Because there is no procedural relationship of the IRS to the County, the question of the applicability of Rule 60(b) is between the IRS and the Trustee. When considered, the Trustee prevails under two unrelated principles. First, Fed.R.Bankr.P. 9024 specifically excepts the Rule 60(b) one-year limitation from "a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest...." Second, Section 502(j) of the

Bankruptcy Code allows the Trustee to recover excess payments made to a creditor.

While the IRS points out that Rule 9024 makes Rule 60(b) applicable to bankruptcy cases, it argues that the exceptions of Rule 9024 do not apply to the present case. This Court disagrees. The first exception in Rule 9024 applies. The rule reads in part, "Rule 60 F.R.Civ.P. applies in cases under the Code *except* that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest *is not subject to the one year limitation* prescribed in Rule 60(b) ..." (emphasis added). Although the Trustee did not file a motion "for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest," his complaint is certainly sufficient to raise the issue. *See* Note 14 above. In this case, as in most bankruptcy cases, the only order allowing claims, as opposed to specific orders disallowing claims, is the Order of Distribution. The Order of Distribution *is* the order allowing claims and it is that order which must be reconsidered here, and it is that order allowing the claim of the IRS for $78,705.83, which is not subject to the one year limitation of Rule 60(b).

■ The unrelated final sentence of Section 502(j) provides a second avenue for the Trustee as it preserves the Trustee's Bankruptcy Act powers to "recover from a creditor any excess payment or transfer made to

14. The United States Court of Appeals for the Seventh Circuit found that a bankruptcy court correctly considered an "adversary complaint" as a "motion under FRCP 60(b) seeking relief from a disbursement order." *Childress v. Aurora National Bank*, 851 F.2d 926 (7th Cir.1988). In that case the bankruptcy court found that the complaint was barred by the one year limitation of Fed.R.Civ.P. 60(b). The complaint was filed against a disbursing agent who, the plaintiff contended, failed to retain funds in escrow to pay real property taxes. The bankruptcy court considered the relief sought as one under Rule 60(b)(1) because of a mistake, or under Rule 60(b)(3) because of misconduct. This case did not involve the failure to pay a claim or the reconsideration of an order of distribution allowing or disallowing the payment of a claim.

Courts are not bound by the nomenclature of pleadings. In a Rule 60(b) context, the Court of

Appeals for the Eleventh Circuit noted, "Although the government characterized its motion as a Rule 60(b) motion for release of the cost bond, this court is not bound by the nomenclature a party attaches to a post trial motion. A court may 'conduct an independent determination of what type of motion was before the district court.'" *United States v. Real Property and Residence Located at Route 1, Box 111, Firetower Road, Semmes, Mobile County, Alabama*, 920 F.2d 788, 791 n. 3 (11th Cir.1991) (citing *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1020 (11th Cir.1988)).

Procedurally, Fed.R.Bankr.P. 7001(1) allows a Trustee to file a complaint "to recover money or property." The Trustee's complaint here is a complaint pursuant to Section 502(j) for declaratory relief and to require the IRS to refund excess dividends.

such creditor." 11 U.S.C. § 502(j).[15] There is no formal time limitation on this action. Fed.R.Bankr.P. 7001(1) allows the Trustee to bring an action to "recover money or property."

■ Reconsideration, as a procedural issue, is controlled by Fed.R.Bankr.P. 3008 which provides no time limit within which a party may ask for reconsideration of an order allowing a claim. Given this Court's determination that the Trustee has, albeit indirectly, asked for reconsideration of the IRS claim, Section 502(j) of the Bankruptcy Code, 11 U.S.C. § 502(j), states, "[a] reconsidered claim may be allowed or disallowed according to the equities of the case."

### 4. Sovereign Immunity

#### (a) Waiver

■ The IRS contends that sovereign immunity prohibits suit by the trustee for return of the overpayment on its claim. Section 106(a) of the Bankruptcy Code, however, provides that "[a] governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose." 11 U.S.C. § 106(a). The purpose of 106(a) is to abrogate sovereign immunity as to a compulsory counterclaim brought in response to a claim filed by the government. *In re Pinkstaff,* 974 F.2d 113, 115 (9th Cir.1992). In determining whether a particular counterclaim is compulsory, the court must employ the "logical relationship

test," which, obviously, requires there to be a logical relationship between the counterclaim and the original claim. *Id.* A logical relationship exists when either "the same set of operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.,* 755 F.2d 1453, 1455 (11th Cir.1985).

■ Clearly, the Trustee's petition to recover the dividend erroneously paid the IRS satisfies the logical relationship test. The IRS's claims are based on the taxes owed by the Debtor and due to be paid from the bankruptcy estate. The payment to the IRS by the Trustee is likewise based on the taxes owed by the Debtor and due to be paid from the bankruptcy estate. The basis of both suits are the Debtor's unpaid taxes. More specifically, the right to payment of the claim in the amount provided for under 11 U.S.C. § 726(a)(1), and the payment made by the Trustee pursuant to 11 U.S.C. § 726(a)(1) to the IRS based upon the claim, arise from the same aggregate core of facts, that is, the Debtor's unpaid taxes.

■ Applying the logical relationship test, the Court in *In re Pinkstaff,* 974 F.2d 113, 115–16 (9th Cir.1992) held that by filing a proof of claim the IRS had waived sovereign immunity as to a cause of action brought by the debtors in that case under 11 U.S.C. § 362(h) for damages resulting from a willful violation of the automatic stay based on the IRS's recordation of a notice of federal tax lien following the institution of the bankrupt-

---

**15.** The powers given the Court and the Trustee by Section 502(j) are a combination of Sections 57(k) and 57(*l*) of the Bankruptcy Act as codified in 1976. The authority to reconsider claims according to the equities of a case was preserved from Section 57(k), as codified in 11 U.S.C. § 93(k) (1976 Ed.). It read, "Claims which have been allowed may be reconsidered for cause and allowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed." *In re Jules Meyers Pontiac, Inc.,* 779 F.2d 480, 481 n. 1 (9th Cir. 1985). Fed.R.Bankr.P. 3008 expanded this power to include reconsideration of claims after an estate was closed. *See,* Advisory Committee Note to Rule 3008.

The powers preserved for the Trustee to recover dividends paid to a creditor are virtually identical to those of Section 57(*l*) of the Bankruptcy Act as codified in 11 U.S.C. § 93(*l*) (1976 Ed.). That section read:

Whenever a claim shall have been reconsidered and rejected, in whole or in part, upon which a dividend has been paid, the trustee may recover from the creditor the amount of the dividend received upon the claim if rejected in whole, or the proportional part thereof if rejected only in part, and the trustee may also recover any excess dividend paid to any creditor. The court shall have summary jurisdiction of a proceeding by the trustee to recover any such dividend.

*Jules Meyers* at 481 n. 1.

cy case. "The basis of both cases revolve around the aggregate core of facts regarding the debtor's unpaid taxes." *Id.* at 115 (quoting *In re Bulson*, 117 B.R. 537, 541 (9th Cir. BAP 1990), *aff'd*, 974 F.2d 1341 (9th Cir. 1992)). The holding of the Ninth Circuit in Pinkstaff is in accord with the vast majority of reported decisions regarding the same issue.[16] If a cause of action which results from post-petition activities of the IRS to collect a prepetition claim for taxes can be said to have arisen out of the same transaction or occurrence out of which the IRS's prepetition tax claim arose, then, *a fortiori*, an action by the trustee for the return of an erroneous dividend paid post-petition on an IRS tax claim can be said to have arisen out of the same transaction or occurrence out of which the IRS's tax claim arose.

■ Bankruptcy is unique. Institution of the bankruptcy case creates causes of actions which did not exist prior to the petition being filed and which do not exist outside of bankruptcy, but which in most instances, relate specifically to facts and circumstances which occurred before bankruptcy, such as the creditor's right to payment. Some of those rights and causes of actions are triggered by circumstances which occurred before bankruptcy, such as in the case of preference actions and turnover actions. Other bankruptcy rights and causes of actions are triggered by circumstances which occur after bankruptcy, such as actions for willful violation of the automatic stay, the recovery of post-petition transfers, or, as in the case at hand, the recovery of overpayments to particular claimants. All are causes of action only by virtue of the bankruptcy. Most involve, are dependent upon, or presuppose a particular creditor's right to payment from the debtor, and consequently, the bankruptcy estate. Therefore, most bankruptcy causes of action brought against particular creditors have been found to be logically related to those creditors' claims, since, in most instances, absent the creditor, the cause of action would not exist.[17]

**16.** In each of the following cases, a suit by the debtor under Section 362(h) for damages, such as the return of property seized, attorneys' fees and costs, resulting from the IRS's institution or continuation of collection proceedings following the filing of the bankruptcy petition was found to be logically related to the IRS's claim for taxes. *In re Pinkstaff*, 974 F.2d 113 (9th Cir.1992); *In re Lile*, 161 B.R. 788 (S.D.Tex.1993); *In re Gribben*, 158 B.R. 920 (S.D.N.Y.1993); *In re Boldman*, 157 B.R. 412 (C.D.Ill.1993); *In re Taylor*, 148 B.R. 361 (S.D.Ga.1992); *In re Cascade Roads, Inc.*, 1992 WL 544948 (W.D.Wash. Nov. 24, 1992); *In re Taborski*, 141 B.R. 959 (N.D.Ill. 1992); *In re Fernandez*, 132 B.R. 775 (M.D.Fla. 1991); *In re Price*, 130 B.R. 259 (N.D.Ill.1991); *In re Klingberg Schools*, 68 B.R. 173 (N.D.Ill. 1986), *aff'd*, 837 F.2d 763 (7th Cir.1988); *In re Bulson*, 117 B.R. 537 (9th Cir. BAP 1990), *aff'd*, 974 F.2d 1341 (9th Cir.1992); *In re Flynn*, 169 B.R. 1007 (Bankr.S.D.Ga.1994); *In re Midway Industrial Contractors, Inc.*, 167 B.R. 139 (Bankr. N.D.Ill.1994); *In re Hudson*, 168 B.R. 449 (Bankr.S.D.Ga.1994); *In re Brown*, 159 B.R. 1014 (Bankr.S.D.Ga.1993); *In re Adams*, 152 B.R. 1021 (Bankr.M.D.Ga.1993); *In re Matravers*, 149 B.R. 204 (Bankr.D.Utah 1993); *In re Fingers*, 148 B.R. 586 (Bankr.S.D.Cal.1993); *In re Long*, 142 B.R. 234 (Bankr.S.D.Ohio 1992); *In re Solis*, 137 B.R. 121 (Bankr.S.D.N.Y.1992). In the following cases, other agencies of the U.S. Government were found to have waived sovereign immunity under Section 106(a) as to suits under Section 362(h) for damages resulting from the willful violation of the automatic stay: *In re University Medical Center*, 973 F.2d 1065 (3rd

Cir.1992) (Department of Health and Human Services); *U.S. v. Inslaw, Inc.*, 113 B.R. 802 (D.C.1989) (Department of Justice), *rev'd on other grounds*, 932 F.2d 1467 (D.C.Cir.1991); *U.S. v. Ketelsen*, 104 B.R. 242 (D.S.D.1988) (Farmers Home Administration); *In re Del Mission Ltd.*, 1991 WL 169078 (9th Cir. BAP Aug. 29, 1991) (State of California Board of Equalization); *In re Operation Open City, Inc.*, 148 B.R. 184 (Bankr. S.D.N.Y.1992) (New York Department of State).

This Court has been able to locate only two cases which directly disagree with the proposition that the claim of a governmental unit is logically related under section 106(a) to a 362(h) cause of action based on attempts to collect the debt upon which the claim is based following the bankruptcy filing. These are *Davis v. I.R.S.*, 136 B.R. 414 (E.D.Va.1992) and *In re Academy Answering Service, Inc.*, 100 B.R. 327 (N.D.Ohio 1989).

**17.** The claims of governmental units were found to be logically related to trustees' suits for the return of preferences in: *In re Parker North American Corp.*, 24 F.3d 1145 (9th Cir.1994); *WJM, Inc., v. Massachusetts Department of Public Welfare*, 840 F.2d 996, 1003–04 (1st Cir.1988); *U.S. v. Pullman Construction Industries, Inc.*, 153 B.R. 539 (N.D.Ill.1993); *In re McLean Industries, Inc.*, 162 B.R. 410 (S.D.N.Y.1993); *In re Motivation Resources, Inc.*, 158 B.R. 184 (Bankr. C.D.Cal.1993); *In re Malmart Mortgage Co., Inc.*, 109 B.R. 1 (Bankr.D.Mass.1989); *In re Maytag Sales and Service, Inc.*, 23 B.R. 384 (Bankr. N.D.Ga.1982); *In re Davis*, 20 B.R. 519 (Bankr.

For this Court to say that a cause of action which would not exist *but for* the governmental unit's claim did not arise out of the same transaction or occurrence from which the governmental unit's claim arose, would be unreasonable. Section 106(a), by its terms, requires only that the cause of action "arose out of the same transaction or occurrence" from which the governmental unit's claim arose. As the Court in *In re Price,* 130 B.R. 259 (N.D.Ill.1991), in holding that a suit against the IRS based on violation of the stay was logically related to the IRS's claim for taxes, stated, "The levy and the resulting claim for fees would not have occurred had there not been unpaid taxes which the government was trying to collect. Thus, an interpretation which treats the two claims as arising from distinct events turns a blind eye to reality." *Id.* at 270.

Section 106(a) is not a paragon of clarity. Most courts have liberally interpreted the logical relationship requirement of that section in favor of waiver if a proof of claim has been filed by the governmental unit. Of course, the bankruptcy cause of action must be against the same governmental agency that filed the claim and relate to debts of the same nature as that represented by the proof of claim. For instance, the filing of a proof of claim for taxes would not constitute a waiver of sovereign immunity as to a debtor's or a trustee's suit for the preferential withholding of Medicaid reimbursements. *WJM, Inc., v. Massachusetts Department of Public Welfare,* 840 F.2d 996, 1003–1004 (1st Cir.1988).[18]

An indispensable requisite of the waiver of sovereign immunity provided for under 11 U.S.C. § 106(a), may be the filing of the proof of claim by the governmental creditor. Where a proof of claim is filed, the governmental claimant submits to bankruptcy causes of action brought by the trustee or the debtor, whether based upon circumstances which occurred prior to or after the bankruptcy case, but which result from the governmental unit's claim, such as activities taken by the governmental unit either prepetition or post-petition in connection with the collection of the claim, or activities taken by the debtor prepetition or trustee post-petition in connection with the payment of

M.D.Ga.1982); *Contra, In re Rebel Coal Company, Inc.,* 944 F.2d 320 (6th Cir.1991); and for the turnover of estate property in: *In re Town & Country Home Nursing Services, Inc.,* 963 F.2d 1146 (9th Cir.1991); *In re the Macleod Co., Inc.,* 935 F.2d 270, 1991 WL 96718 (6th Cir. June 6, 1991) (unpublished disposition); *In re The Craftsmen, Inc.,* 163 B.R. 88 (Bankr.N.D.Tex.1993); *In re Klingberg Schools,* 68 B.R. 173 (N.D.Ill.1986), *aff'd,* 837 F.2d 763 (7th Cir.1988); *Connecticut Performing Arts Foundation, Inc. v. Brown,* 47 B.R. 911 (D.Conn.1985), *aff'd,* 801 F.2d 566 (2d Cir.1986); *In re Western States Drywall, Inc.,* 145 B.R. 661 (Bankr.D.Idaho 1992); *In re Shelby County Healthcare Services of Al., Inc.,* 80 B.R. 555 (Bankr.N.D.Ga.1987); *In re Wood,* 52 B.R. 513 (Bankr.N.D.Ala.1985); *In re Adirondack Railway Corp.,* 28 B.R. 251 (Bankr.N.D.N.Y. 1983); and for the return of unauthorized postpetition transfers in: *In re 995 Fifth Avenue Assoc., L.P.,* 963 F.2d 503 (2nd Cir.1992); *In re University Medical Center,* 973 F.2d 1065 (3rd Cir.1992); *In re Johnston,* 163 B.R. 890 (Bankr. S.D.Fla.1993); and for the return of property fraudulently conveyed in *In re Windrush Associates II,* 105 B.R. 195 (Bankr.D.Conn.1989).

A suit by a debtor against a governmental unit based upon a violation of the discharge injunction provided for under 11 U.S.C. § 524(a) would not result in a waiver under section 106(a) since any damages resulting from the suit would inure

to the benefit of the debtor, and not the bankruptcy estate. *In re Germaine,* 152 B.R. 619 (9th Cir. BAP 1993); *In re Jones,* 164 B.R. 543 (Bankr.N.D.Tex.1994); *In re Schmidt,* 1993 WL 632252 (Bankr.E.D.Cal. Nov. 1, 1193); *In re Hardy,* 161 B.R. 320 (Bankr.S.D.Ga.1993); *In re Leber,* 134 B.R. 911 (Bankr.N.D.Ill.1991).

**18.** *See also, In re Zera,* 72 B.R. 997 (D.Conn. 1987) (proof of claim filed by state for employee withholding taxes does not waive sovereign immunity of state as to trustee's suit for sum state garnished in satisfaction of debtor's sales and use tax liability); *White v. Dept. of Health and Human Services,* 171 B.R. 444 (Bankr.D.C.1994) (proof of claim filed by IRS does not waive sovereign immunity of Department of Health and Human Services); *In re Rocchio and Sons, Inc.,* 165 B.R. 86 (Bankr.D.R.I.1994) (proof of claim filed by state taxing authority does not waive sovereign immunity of state department of transportation); *In re Blue Diamond Coal Co.,* 145 B.R. 895 (Bankr.E.D.Tenn.1992) (proof of claim filed by state taxing authority does not waive sovereign immunity of state workers' compensation board); *In re Four Seasons Care Centers, Inc.,* 119 B.R. 681 (Bankr.D.Minn.1990) (proof of claim filed by state department of revenue does not waive sovereign immunity of state department of human services).

**640**

the claim.[19] *But for* the claim there would be no cause of action or basis for suit. On that basis, the bankruptcy court in *In re Malmart Mortgage Co., Inc.,* 109 B.R. 1 (Bankr. D.Mass.1989), found that by filing a proof of claim for withholding taxes, the IRS had waived sovereign immunity as to a preference action filed by the trustee for the return of withholding tax payments made within 90 days of bankruptcy. The court stated:

[T]he Trustee's and the United States' claims arise from the same transaction or occurrence: both arise from Malmart's failure to make timely payments of withheld income taxes, withheld F.I.C.A. taxes, and unemployment taxes. The United States seeks payment of the remaining tax arrearage. The Trustee seeks to recoup payments already made on account of those arrearage, claiming that they enabled the United States to receive more than it would have received in a distribution under Chapter 7 of the Bankruptcy Code if the payments had not been made. The United States' and Trustee's claims thus "arose out of the same transaction or occurrences."

*Id.* at 3. Where governmental units have filed proofs of claim and have been sued by

the Debtor or trustee, courts have consistently found a waiver of sovereign immunity in bankruptcy cases based on the same *"but for"* reasoning.[20]

Bankruptcy causes of action, such as actions for the recovery of preferences and actions for the turnover of estate property, have much in common with the suit for recovery of the overpayment brought by the Trustee in this case. In each situation, a trustee is seeking the return of something that the creditor received from the debtor's estate and would otherwise be entitled to keep, except for the peculiarities of bankruptcy, which require that creditors within a particular class be treated equally, and consequently, that no one creditor within a particular class receive more than he or she would otherwise be entitled to under Section 726 of the Bankruptcy Code. Any construction of Section 106(a) other than the *"but for"* reasoning espoused in the majority of cases that have considered the issue would defeat the statutory scheme carefully designed to insure equality of distribution and result in a favored position for particular governmental creditors who happen to receive preferential transfers prior to a case, or

**19.** By its plain language, 106(a) does not mention a "proof of claim," but merely refers to "such governmental unit's claim." An issue exists as to whether a governmental unit must actually file a proof of claim pursuant to 11 U.S.C. § 501 and Bankruptcy Rule 3001 in order for sovereign immunity to be waived under 106(a). Many courts have determined that absent the actual filing of a proof of claim, a governmental entity does not waive sovereign immunity under 106(a). *In re Dowdle,* 164 B.R. 43 (Bankr.W.D.Pa.1994); *In re Peaksolutions Corp.,* 168 B.R. 918 (Bankr.D.Minn.1994); *In re Kincaid,* 148 B.R. 844 (Bankr.E.D.Ky.1992); *In re Dillon,* 148 B.R. 852 (Bankr.E.D.Tenn.1992); *In re Nichols,* 143 B.R. 104 (Bankr.S.D.Ohio 1992); *In re Lehal Realty Assoc.,* 133 B.R. 9 (Bankr.S.D.N.Y.1991); *In re Wilwerding,* 130 B.R. 294 (Bankr.S.D.Iowa 1991); *In re Everett,* 127 B.R. 781 (Bankr.E.D.N.C.1991); *In re Browne,* 101 B.R. 188 (Bankr.D.Alaska 1989); *In re Prudential Lines, Inc.,* 79 B.R. 167 (Bankr. S.D.N.Y.1987). Other courts construe 106(a) to require that the governmental unit have a claim, that is a right to payment against the bankruptcy estate, and look to activity by the creditor that confirms the existence of the claim, such as actions taken to collect the debt, or participation in the bankruptcy case, or documents filed in the

case evidencing an expectation of payment. *In re Town & Country Nursing Services, Inc.,* 963 F.2d 1146 (9th Cir.1991); *In re Gribben,* 158 B.R. 920 (S.D.N.Y.1993); *In re Taylor,* 148 B.R. 361 (S.D.Ga.1992); *U.S. v. Inslaw, Inc.,* 113 B.R. 802 (D.D.C.1989); *In re The Craftsmen, Inc.,* 163 B.R. 88 (Bankr.N.D.Tex.1993); *In re Johnston,* 163 B.R. 890 (Bankr.S.D.Fla.1993); *In re Fingers,* 148 B.R. 586 (Bankr.S.D.Cal.1993); *In re Operation Open City, Inc.,* 148 B.R. 184 (Bankr. S.D.N.Y.1992); *In re Western States Drywall, Inc.,* 145 B.R. 661 (Bankr.D.Idaho 1992); *In re Davis,* 20 B.R. 519 (Bankr.M.D.Ga.1982). Since the IRS filed a proof of claim against the estate in the case at hand, the issue as to whether a governmental unit must actually file a proof of claim pursuant to 11 U.S.C. § 501 and Bankruptcy Rule 3001 in order for sovereign immunity to be waived under 106(a) is not before this Court.

**20.** *In re 995 Fifth Avenue Assoc., L.P.,* 963 F.2d 503 (2nd Cir.1992), refund of taxes paid under protest; *WJM, Inc., v. Massachusetts Department of Public Welfare,* 840 F.2d 996 (1st Cir.1988), recovery of preferences; *In re University Medical Center,* 973 F.2d 1065 (3rd Cir.1992), recovery of post-petition transfers; *In re Town & Country Home Nursing Services, Inc.,* 963 F.2d 1146 (9th Cir.1991), turnover of estate property.

who possess estate property when a case is filed, or who violate the stay to obtain estate property, or who mistakenly receive an overpayment from the bankruptcy trustee. All of these are results which Section 106(a) was designed to avoid.

■■■ The IRS, in the case at hand, received a dividend from the bankruptcy estate based upon a proof of claim filed in the bankruptcy case. Any amount in excess of the amount the IRS should have received must be redistributed to a creditor having a claim against the bankruptcy estate. Consequently, the trustee's suit to recover that amount is property of the estate under Section 541 of the Bankruptcy Code. And because that suit is logically related to the

IRS's claim for taxes, all the requirements of 11 U.S.C. § 106(a) have been satisfied. This Court finds that the IRS has waived sovereign immunity to the trustee's suit.[21]

■■■ To allow the government to benefit by participating in the bankruptcy process, only to claim immunity when that process no longer benefits the government, would be wrong. In *Pacific Far East Lines, Inc.*, 889 F.2d 242 (9th Cir.1988) the Trustee paid approximately $776,000 into the Referees' Salary and Expense Fund as required by Section 40(c)(2) of the Bankruptcy Act of 1898. After the payment, Congress established a maximum amount of $200,000 to be paid in such cases. The Trustee sought the repayment of the $576,000 overpayment.

---

21. The same result may be reached under a Section 106(c) analysis. Paragraph (c) of Section 106 reads:

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "*creditor*", or "*entity*", or "*governmental unit*" applies *to governmental units; and* (2) a determination of the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106(c) (emphasis added).

The term *creditor* found in Section 106(c) appears in the last sentence of Section 502(j) of the Bankruptcy Code which reads, "This subsection does not alter or modify the trustee's right to recover from a *creditor* any excess payment or transfer made to such *creditor*." 11 U.S.C. § 502(j) (emphasis added). Because Section 106(c) applies directly to Section 502(j), under Section 106(c), notwithstanding any assertion of sovereign immunity, the Trustee's powers under Section 502(j) not only apply to the IRS, but the IRS is bound by a determination of this Court arising under section 502(j).

For purposes of a Section 106(c) analysis, the issue under Section 502(j) is not whether the IRS may be "sued" by the Trustee, but rather what relief is requested. The Trustee's action may be characterized as an action for declaratory and injunctive relief, rather than a suit for a money judgment. In his third party complaint against the IRS the Trustee prays for a "Declaratory Judgment of this Court Determining the respective priorities of ... [the County] and the IRS to the funds disbursed by the Trustee; and, if the IRS was overpaid, an Order of this Court requiring the IRS to repay the Trustee the amount of the overpayment...." Proceeding No. 10 (parenthetical added). As Justice Scalia wrote in comparing *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) to *U.S. v. Nordic Village*, 503 U.S. 30, 112 S.Ct.

1011, 117 L.Ed.2d 181 (1992), "A suit for payment of funds from the treasury is quite different from a suit for the return of tangible property in which the debtor retained ownership." *U.S. v. Nordic Village* at 503 U.S. 39, 112 S.Ct. 1017. In its argument to this Court the IRS relies on *Nordic Village*. In *Nordic Village*, the Supreme Court refused to allow a bankruptcy trustee to bring suit against the IRS to recover a tax payment made by an officer of a Chapter 11 debtor in possession, which tax payment was credited against the officer's individual liability. Once the IRS was in possession of the funds, a money judgment, not injunctive relief, was required for its return because the full amount transferred to the IRS by the officer was an amount rightfully owed the IRS. Apparently the amount paid the IRS did not exceed whatever amount the IRS was entitled to receive. In reaching the result in *Nordic Village*, Justice Scalia explained the interpretation of Section 106(c) which would allow this Court to enter relief for the Trustee against the IRS. He wrote:

[Section] 106(c) permits the bankruptcy court to issue "declaratory and injunctive"—though not monetary—relief against the Government. *Hoffman* [*v. Connecticut Department of Income Maintenance*], 492 U.S. [96] at 102, 109 S.Ct. [2818] at 2823 [106 L.Ed.2d 76 (1989)]. This conclusion is reached by reading the two paragraphs of subsection (c) as complementary rather than independent: the first paragraph identifies the subject matter of disputes that courts may entertain under the subsection and the second paragraph describes the relief that courts may grant in such disputes. That is to say, the second paragraph specifies the manner in which there shall be applied to governmental units the provisions identified by the first paragraph, i.e., a manner that permits declaratory or injunctive relief but not an affirmative monetary recovery.

*Id.* at 35, 112 S.Ct. at 1015.

Pursuant to Section 57(k) of the Bankruptcy Act of 1898, the bankruptcy court required the government to refund the money. The district court reversed the bankruptcy court. The court of appeals reversed the district court and affirmed the bankruptcy court. In so doing the court of appeals found:

> The government clearly has an interest in funds paid into the treasury, but when those funds derive from the bankruptcy process the government must submit to the continuing jurisdiction of the bankruptcy court. Prompt and effectual administration of bankruptcy estates would be hindered if all claims paid to the government as fees, administrative expenses, or dividends, were forever withdrawn from the jurisdiction of the bankruptcy court the moment they were paid. Under such a rule trustees would have to hold the government's claims until the very end of the case in order to assure that no correction was necessary.[22] A better principle and policy is that " '[h]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure.' " *Katchen v. Landy,* 382 U.S. 323, 333 n. 9, 86 S.Ct. 467, 474 n. 9, 15 L.Ed.2d 391 (1966) (quoting *Wiswall v. Campbell,* 93 U.S. 347, 351, 23 L.Ed. 923 (1876)).

*Id.* at 245–46 (footnote added).

(b) Exhaustion of Administrative Remedies

 If sovereign immunity is waived, this right to sue may presuppose some antecedent action. Outside of bankruptcy, original jurisdiction is in the district courts over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a)(1). However, a taxpayer ordinarily must exhaust administrative remedies before bringing a suit for the return of a tax

overpayment. Specifically, a suit may not be maintained against the United States for "the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary...." 26 U.S.C. § 7422(a).

Prior to the enactment of 11 U.S.C. § 106(a), a trustee's lack of compliance with section 7422(a) may have foiled certain causes of action brought under the Bankruptcy Act to recover funds collected by or paid to the IRS. For example, in *U.S. v. Rochelle,* 363 F.2d 225 (5th Cir.1966), the court of appeals dismissed an action brought by the bankruptcy trustee to compel the return of money seized prepetition by the IRS to ensure the collection of taxes on the basis that the trustee had failed to file a claim for refund before instituting the action. In *Rochelle,* however, the IRS's claim had been paid in full from the proceeds of the property seized and the IRS did not file a proof of claim in the bankruptcy case. Even had 106(a) been in effect, therefore, it would not have availed the trustee, since there was no "governmental unit's claim" for the trustee's cause of action to relate to. In *In re Madden,* 388 F.Supp. 47 (D.Idaho 1975), however, the district court held that the trustee in bankruptcy was not required to comply with section 7422(a) before bringing suit in the bankruptcy court for return of a dividend mistakenly paid in the wrong amount to satisfy tax claims of the United States.

 Neither the trustee nor the IRS has addressed to what extent, if any, the trustee has complied with section 7422(a) or must comply with section 7422(a), probably because section 7422(a) has no application or bearing on the present circumstances. The trustee's claim is not for the overpayment of a tax. It is not for the recovery of an internal revenue tax that was erroneously or illegally assessed or collected. It is not for

22. This case was decided before Fed.R.Bankr.P. 3008 expanded claims reconsideration to *re-* *opened* cases.

the recovery of a penalty collected without authority or a sum wrongfully collected. The trustee's suit is for the return of a dividend paid to a claimant under the auspices of the Bankruptcy Code and jurisdiction of the bankruptcy court. The fact that the claimant who received the dividend is the United States and the claim is for taxes is irrelevant. The process of claim determination and payment is within the exclusive province of the bankruptcy court. The United States *voluntarily* entered that province with full knowledge and understanding of the attendant benefits and consequences. By filing its proof of claims so as to receive the benefits of participation in the process, the United States waived immunity as to the consequences of the same.

As stated by the court in *In re Madden:*
This court does not quarrel with the meaning of 28 U.S.C.A. 1346(a)(1) and Section 7422(a) of the Internal Revenue Code of 1954, and the cases cited in support thereof, as they clearly mean that suit is proper in the District Court only after payment of the tax assessed and demand to the Secretary for a refund; however, these statutes do not control the result in this case. Rather, the Bankruptcy Act is applicable. Simply because the trustee paid a dividend to the United States, such payment does not sever the Bankruptcy Court's summary jurisdiction by triggering 28 U.S.C.A. 1346(a)(1). The Bankruptcy Court has continuing jurisdiction to administer the bankruptcy estate until closing. The Bankruptcy Court, although it has allowed a claim, is expressly given summary jurisdiction to reconsider and reject a claim by virtue of Section 57(k) of the Bankruptcy Act, 11 U.S.C.A. 93(k) and upon reconsideration the Bankruptcy Court, by summary proceeding, can order that a dividend previously paid be returned, pursuant to Section 57(*l*) of the Bankruptcy Act, 11 U.S.C.A. 93(*l*). Sections 57(k) and (*l*) are applicable to Chapter XI proceedings by virtue of Section 302 of the Bankruptcy Act.

Section 57(*l*) of the Bankruptcy Act is a logical extension of summary jurisdiction conferred by Section 2(a)(2) of the Bank-ruptcy Act, 11 U.S.C.A. 11(a)(2), as it provides the trustee an efficient, summary means to correct a wrongful distribution and thereby equitably administer the bankruptcy estate. Moreover, the Supreme Court has long recognized that a chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period of time, and the provision for summary disposition, without regard to usual modes of trial attended by some unnecessary delay, is one of the means chosen by Congress to effectuate that purpose. *Katchen v. Landy,* 382 U.S. 323, 328–329, 86 S.Ct. 467, 471–472, 15 L.Ed.2d 391 (1966).

388 F.Supp. at 50–51. Citations omitted.

Section 106(a) is a separate, independent waiver of sovereign immunity, unhampered by administrative processes and requirements. The exhaustion of administrative remedies, which may otherwise be jurisdictional outside of bankruptcy, becomes unnecessary as to a cause of action brought which relates to a claim of the government against the bankruptcy estate. *In re University Medical Center,* 973 F.2d 1065 (3rd Cir.1992); *In re Town & Country Home Nursing Services, Inc.,* 963 F.2d 1146 (9th Cir.1991); *In re the MacLeod Co., Inc.,* 935 F.2d 270, 1991 WL 96718 (6th Cir. June 6, 1991) (unpublished disposition); *Anderson v. F.D.I.C.,* 918 F.2d 1139 (4th Cir.1990); *Ashbrook v. Block,* 917 F.2d 918 (6th Cir.1990); *In re Gribben,* 158 B.R. 920 (S.D.N.Y.1993); *In re Motivation Resources, Inc.,* 158 B.R. 184 (Bankr.C.D.Cal.1993); *In re Windrush Associates II,* 105 B.R. 195 (Bankr.D.Conn. 1989); *In re Shelby County Healthcare Services of Al., Inc.,* 80 B.R. 555 (Bankr.N.D.Ga. 1987). Based upon that premise, the Court in *In re Gribben,* 158 B.R. 920 (S.D.N.Y.1993) determined that the IRS had waived sovereign immunity under 106(a) and that the Chapter 7 trustee's adversary proceeding for turnover of the debtor's tax refunds was not barred by failure of the trustee or debtor first to make a claim for refund as would otherwise be required by section 7422(a). The court explained as follows:

Section 7422 of the Internal Revenue Code, which provides for a taxpayer suit to recover taxes wrongfully assessed or collected, waives the Government's immunity to such actions. Gribben, however, did not bring an action under 26 U.S.C. § 7422. Instead, he sought to obtain his tax refund through a "turnover" proceeding brought under the Bankruptcy Code. He relied on 11 U.S.C. § 542(d), which allows action against any "entity" that owes money or property to the estate. The Bankruptcy Code, like the Internal Revenue Code, has its own waiver of sovereign immunity, contained in § 106.

. . . .

It appears to be the purpose of § 106(a) to provide that where the Government has taken action under the provisions of the Bankruptcy Code to recover a pre-petition claim against the debtor, sovereign immunity is waived with respect to related claims of the debtor against the same governmental unit so that both sides of the mutual obligations shall be adjudicated under one roof in the Bankruptcy Court. It is the obvious purpose of § 106 to provide that claims and related counterclaims be adjudicated together, rather than in separate Courts and proceedings. This purpose would be undermined by the interpretation urged by the Government. For where the Government seeks to exercise an offset, its right to the offset would be adjudicated in the Bankruptcy Court under § 553, while the validity of the related counterclaim of the debtor would need to be adjudicated in a separate proceeding authorized by § 7422 of the Internal Revenue Code.

158 B.R. at 922–23 (citations omitted). *Cf., In re Bricknell Investment Corp.,* 922 F.2d 696 (11th Cir.1991) (attorney's fees may be awarded against the IRS for filing an unjustified proof of claim and there are no administrative remedies to be satisfied before that award may be obtained).

In *Ashbrook v. Block,* 917 F.2d 918 (6th Cir.1990), the court held that, if the Farmers Home Administration had waived sovereign immunity pursuant to Section 106(a) by filing a proof of claim, the debtor in possession's

tort suit against the Farmers Home Administration was not barred by failure to file a presuit administrative claim as required under the Federal Tort Claims Act. The court explained as follows:

> As the legislative history makes clear, Congress was cognizant at the time of section 106(a)'s passage that its prior enactments, such as the FTCA, had already waived the immunity of governmental agencies and had prescribed the conditions of their waiver. Although it is significant that Congress indicated its intent that the waiver of immunity under section 106(a) approximate the waiver which exists outside of bankruptcy, we cannot ignore that Congress sought a "limited change." The purpose of permitting a party to bring a compulsory counterclaim once the government has filed a proof of claim is to remove the perceived unfairness of allowing the government to receive a distribution from the estate without being exposed to any liability. Consistent with this purpose, the legislative history of section 106(a) unequivocally conveys that the government's exposure to liability is automatic upon its filing a proof of claim. The legislative history makes no reference to administrative exhaustion in the context of a counterclaim under section 106(a). We believe that the government's automatic exposure to liability once it files a proof of claim is the "limited change" which Congress intended section 106(a) to effectuate. We hold that section 106(a) contains no administrative exhaustion requirement.

917 F.2d at 923 (citations omitted). *See also, In re Motivation Resources, Inc.,* 158 B.R. 184 (Bankr.C.D.Cal.1993) (where FDIC had waived sovereign immunity under 106(a), trustee filing suit against FDIC to avoid preferential transfers and fraudulent conveyances is not obligated to comply with the mandatory administrative claims determination process requirements of the Financial Institution Reform, Recovery and Enforcement Act).

In *Anderson v. F.D.I.C.,* 918 F.2d 1139 (4th Cir.1990), the court likewise held that a suit brought by a Chapter 7 trustee against the Federal Deposit Insurance Corporation

to avoid fraudulent transfers and for breach of fiduciary duty and conversion were not precluded by the failure of the trustee or his predecessor in interest, the debtor, to file an administrative claim under the FTCA. The court stated:

Congress enacted 11 U.S.C. § 106 of the Bankruptcy Code specifically to waive sovereign immunity in situations such as the one before us. To allow the FDIC to participate in the estate without subjecting itself to any liability it has to the trustee "would be one-sided" the Senate Report states. The House Report is to the same effect. Both reports agree with our construction of 11 U.S.C. § 106. We see nothing inconsistent in concluding that, by assertion of its claim against the estate, the FDIC waived the protections it otherwise enjoys, both under the doctrine of sovereign immunity and the Torts Claim Act. Instead, any inconsistency lies in the FDIC's position.

If the Tort Claims Act is applied to such claims as the present one related to bankruptcy, as the FDIC has suggested, 11 U.S.C. § 106 would be meaningless in all cases of torts thereunder, for the Torts Claims Act contains its own waiver of sovereign immunity. We decide, therefore, that we must give effect to both statutes until Congress provides otherwise, and that "the Bankruptcy Code's explicit waivers of sovereign immunity are entirely distinct, separate and independent from and in addition to those found in ... the FTCA." *In re Inslaw,* 76 B.R. 224, 234 (Bankr.D.D.C.1987).

*Anderson* at 1143–44 (citations omitted). *See also, In re Windrush Associates II,* 105 B.R. 195 (Bankr.D.Conn.1989) (where state university waived its claim of sovereign immunity by filing proof of claim, trustee bringing action against university was not required to satisfy state statute's notice requirement for suing state instrumentality).

■ Section 106(a) was designed to insure that the United States would not gain an advantage over other creditors by virtue of sovereign immunity. Appending non-bankruptcy, jurisdictional administrative requirements to section 106(a)'s waiver, especially as it applies to causes of action which are purely creatures of bankruptcy, would serve to unduly hinder the aim of the statute, as well as the summary administration of claims in bankruptcy cases.

### 5. Reconsideration of Claims and Recovery of Property

■ Four bankruptcy law principles decide the substantive issues of this case. These are:

1. Allowed claims may be reconsidered after a case has been reopened. Fed. R.Bankr.P. 3008.

2. A Court may allow or disallow a reconsidered claim according to the equities of a case. 11 U.S.C. § 502(j).

3. A Trustee may recover excess funds paid to a creditor. 11 U.S.C. § 502(j).

4. A Trustee may sue for the return of excess funds paid to a creditor. Fed. R.Bankr.P. 7001(1).

This Court finds that cause exists under Fed.R.Bankr.P. 3008 and Section 502(j) of the Bankruptcy Code to reconsider the claim allowed the IRS and the one tacitly disallowed the County and that the Trustee has ample authority to seek repayment from the IRS for the excess funds paid the IRS.[23]

---

**23.** There is an overwhelming equitable nature to claims reconsideration and asset administration in bankruptcy practice. The Congressional pattern of a liberal allowance of claims reconsideration was emphasized in a case where the IRS sought to alter or amend a default judgment of the bankruptcy court disallowing its amended claim, but where the IRS had not filed an appeal within the statutory 10 day period. The Bankruptcy Court for the Western District of New York explained the broad powers given the bankruptcy Court to reconsider claims. The court wrote that rules, "9023 (Amendment of Judgment), 3008 (Reconsideration of Claims), 9024 (Relief from Order Allowing or Disallowing a Claim after one year), and 7055 (Setting aside a Default) contemplate and empower the Bankruptcy Court to reconsider an allowed or disallowed claim despite any availability of appeal. Therefore, the Court has the power to reconsider the IRS claim on the basis of its amended proof of claim." *In re Miles,* 39 B.R. 494, 497–98 (Bankr.W.D.N.Y.1984).

In a situation prompting a finding of excusable neglect, the Court in *In re Washington County*

Whether to reconsider a claim is a retrospective process. "Why" a claim should be reconsidered is determined before "whether" a claim should be reconsidered. *In re Kelderman*, 75 B.R. 69 (Bankr. S.D.Iowa 1987), a case quite similar to the present one, demonstrates this point. In *Kelderman* an unpaid creditor filed a motion for reconsideration of an order of distribution and to recover excess payments. The unpaid creditor and the court relied on the 1984 version of Section 502(j) of the Bankruptcy Code and on Fed.R.Bankr.P. 3008. In deciding whether the claim should be reconsidered the court considered why the creditor had not been paid. The creditor had filed a proof of claim which had never been docketed; the trustee omitted the claim from his final report; the creditor did not receive notice of the final report or of the order of distribution. The court stated, "This is not a case where blame can be cast on any one party alone." *Id.* at 70. In an "effort to do equity for all concerned ..." *id.* at 71, the court vacated the order of distribution and suggested if it were necessary to recover funds paid other creditors, the trustee may consider an adversary proceeding under Fed. R.Bankr.P. 7001(1). Emphasizing that a denial of reconsideration under Fed.R.Bankr.P. 3008 would result in a windfall to an unjustly enriched creditor, the court reconsidered the filed proof of claim and its order of distribution.

When a court decides to reconsider a claim, an accounting is required and in the case of a creditor who should have been paid but was not, funds to satisfy that claim must be forthcoming. In a case involving one of the defendants here, the Fidelity & Deposit Company of Maryland, the question of a trustee's negligence was raised.[24] The facts are quite similar to the present ones. The case began as one under Chapter 11 but was converted to Chapter 7. After an order of distribution and an audit, the case was closed. When an unpaid creditor began an action in state court against the trustee and his bonding company, the case was reopened and the court reconsidered the unpaid creditor's claim. In finding no negligence the court wrote, "Usually, however, an erroneous distribution effects a windfall to other creditors. Normally, a trustee may recover distributions which he has mistakenly made from the recipients receiving the windfall due to a factual mistake." *In re Sturm*, 121 B.R. 443, 450 (Bankr.E.D.Pa.1990) (citations omitted).

The bankruptcy court in Rhode Island similarly recognized that section 502(j) "provides ample authority to support the Trustee's request [to recover improperly paid funds] and that the attempt to collect overpayments is not prejudicial to creditors who receive monies to which they are not entitled...." *In re Guild Music Corp.*, 163 B.R. 17, 18 (Bankr.D.R.I.1994) (parenthetical added).

The Court of Appeals for the Ninth Circuit affirmed a bankruptcy court's determination that claims that have been allowed could be reconsidered and that the trustee could recover excess dividends paid a creditor. The case was decided under Sections 57(k) and 57(*l*) of the Bankruptcy Act, the sections

---

*Broadcasting, Inc.*, 39 B.R. 77 (Bankr.D.Maine 1984) wrote:

With respect to reconsideration of this claim under Bankruptcy Rule 3008, the Court concludes that a liberal standard of "excusable neglect" is appropriate. The Rules themselves make clear that little weight should be accorded to any party's interest in the finality of an order disallowing a claim. See Bankruptcy Rule 3008 (Advisory Committee Note) (reconsideration may be granted even after bankruptcy case has been closed if case is later reopened); Bankruptcy Rule 9204 (motion to reconsider disallowed claim is not subject to the one year limitation prescribed in Fed. R.Civ.P. 60(b)). At least where dividends have not been paid, there is no prejudice to the other creditors in allowing reconsideration; to deny reconsideration of the disallowance of a just claim would result in an undeserved windfall to other creditors. *See, Sentry Financial Service Corp.* [*v. Pitrat*], 34 B.R. [771] at 773, 11 B.C.D. [347] at 348 [(9th Cir. BAP 1983)]. Moreover, the order disallowing Tanner's claim is, in essence, a default judgment. As this Court has recently stated, default judgments are not favored in the law. *Golden Ark Enterprises v. Utsick (In re Utsick)*, 37 B.R. 704, 705 (Bkrtcy.D.Me. December 7, 1983).

*Id.* at 79.

24. As stated above, whether this trustee was negligent is not something this Court must determine to decide the issues here. *See* Note 7 above.

from which Section 502(j) of the Code were derived. *See* Note 15 above. In reviewing the bankruptcy court's holding the circuit court said, "factors ... such as the remedies still available to recover payment from the debtor, go into the balancing of equities under sections 57(k) and 57(*l*). The balancing of equities is a factual process and the resulting tip of the scales is a factual determination." *In re Jules Meyers Pontiac, Inc.,* 779 F.2d 480, 482 (9th Cir.1985). The Court concluded, "The bankruptcy Court's decision in favor of the Trustee was based upon a proper balancing of the equities in this case, as evidenced by the findings of fact." *Id.*

And finally, as discussed above in the similar case of *In re Frontier Enterprises, Inc.,* reopened some 13 months after the entry of an order of distribution to allow the Trustee to pay the claim of the Small Business Administration, which was incorrectly omitted from the Distribution Order, the court wrote, and it is worth repeating a second time here:

> It is beyond argument that somebody made a mistake by omitting the SBA from the Distribution Order. It is beyond argument that money that rightfully belonged to the SBA went to creditors other than the SBA. It is hard to imagine more compelling cause for reopening a case. This is not a case for discretionary refusal to reopen.

*In re Frontier Enterprises, Inc.,* 70 B.R. 356, 359 (Bankr.C.D.Ill.1987). In *Frontier* the court denied the creditor's motion for rehearing of the court's order reopening the case, the first order of distribution remained vacated and the trustee was allowed to try to recover the distributions paid in error.

■ In specific recognition of the three issues in this case, as to the first, the Trustee argues that if the County claims the priority of a statutory lien under Florida statute, then the County should have recorded that lien. The Trustee reasons that Section 724(d) of the Bankruptcy Code, 11 U.S.C. § 724(d), affords priority to statutory tax liens to the extent that those liens are determined in the same manner as the priority of a tax lien under Section 6323 of the Internal Revenue Code, 26 U.S.C. § 6323. The Trustee then concludes that because a federal tax lien must be recorded, then the county's tax lien must have been recorded to be considered a statutory lien. And because it was not, the County may not share in the distribution.

■ The County disagrees, as does this Court. There is no requirement that the County record ad valorem tax liens. These liens are statutory with out recordation and in Florida, as well as most states, are afforded a priority status.[25] The County was clearly entitled to share in the trustee's distribution.

As between the IRS and the County, the two claimants agree that the County's 1987 tax lien was superior to the IRS claim and that as to the first issue, the County should have been paid.

■ As to the second issue, the Court finds that the County is entitled to a current share of the distribution. The Trustee concedes that if the County were entitled to an

---

**25.** *See, In re the Point Restaurant and Oyster Bar,* 86 B.R. 252 (Bankr.N.D.Fla.1988). The Trustee argues that Section 6323 of the Internal Revenue Code requires that the County's statutory lien be recorded, as the IRS lien must be, in order for the County lien to take priority over the IRS lien. The Trustee reasons that Section 6323 concedes priority where notice of the two liens are filed in the same manner and that Section 724 of the Bankruptcy Code allows priority to statutory tax liens to the extent that the "priority is determined in the same manner as the priority of a tax lien under section 6323 of the Internal Revenue Code." What Section 724 says is that "[a] statutory lien *the priority of which is determined in the same manner as the priority of a tax lien under section 6232 of the Internal Revenue Code*

of 1954 (26 U.S.C. 6323) shall be treated under subsection (b) of this section the same as if such lien were a tax lien." 11 U.S.C. § 724(d) (emphasis added). The situation here is that the priority of the county's statutory lien for ad valorem taxes is *not determined* in the same manner as a tax lien under Section 6323. This Court rejects the Trustee's position that Section 724 *requires* that the priority of the two liens be created identically. Section 724 requires that the liens be treated the same if, and only if, the priorities themselves *are determined in the same manner.* They are not; on this point Section 724(d) has no application. Notwithstanding Section 6323, Section 724 and the Trustee's argument, the IRS concedes in this case that the County's lien is superior to the lien of the IRS.

initial share of the distribution, then the County is entitled to such a share now. As discussed, the IRS does not agree that the County should be paid now, and even if it should, the IRS argues that the Trustee personally, or in his official capacity, is responsible for satisfying the payment. This Court has rejected the IRS argument on timeliness, as well as both claimants' arguments on trustee liability; consequently, as to the second issue, the Court finds that the County is entitled to share in a Trustee's redistribution.

■ As to the third issue, the Court finds that the source of the funds to satisfy the County's 1987 tax claim, should be the overpaid amount distributed to the IRS. Section 502(j) of the Bankruptcy Code specifically allows the Trustee "to recover from a creditor any excess payment or transfer made to such creditor." The IRS is not and cannot be prejudiced by the requirement that it return an overpayment of funds of which it was never entitled. Of course the IRS will, after making a refund of the overpayment, have a smaller dividend than it did initially, but what the IRS will have is what the IRS was only entitled to initially.[26]

## Conclusion

In an attempt to balance the equities in this case, this Court concludes that the combined effect of claims reconsideration under Fed.R.Bankr.P. 3008 and the Trustee's powers to recover excess dividends from overpaid creditors under Section 502(j) of the Bankruptcy Code, require that the County receive payment for its 1987 taxes and that the source of the funds for that payment should be the amount overpaid the IRS. The Court finds that summary judgment should be entered for the Trustee, that the claims of the County and the IRS should be reconsidered, that the claim of the County be allowed in the amount of $8,137.59, and that the claim of the IRS be allowed in the

amount of $156,854.51 but that the payment to the IRS of $78,705.83 by the Trustee in his original distribution be reduced by $8,137.59.

A separate Order consistent with this Memorandum Opinion will be issued contemporaneously.

## ORDER

### GRANTING SUMMARY JUDGMENT FOR THE TRUSTEE AND REQUIRING RETURN OF FUNDS AND REDISTRIBUTION OF ASSETS

In conformity with and pursuant to the Memorandum Opinion entered contemporaneously herewith, it is **ORDERED, ADJUDGED, AND DECREED,** that:

1. Summary judgment for the Trustee, as against the County and the IRS, is **GRANTED.**

2. The County's claim of $8,137.59 is reconsidered and allowed.

3. The IRS's claim of $156,854.51 is allowed but the Trustee's distribution to the IRS of $78,705.83 should be reduced by $8,137.59.

4. The IRS shall return $8,137.59 to the Trustee within 45 days of the date of this order.

5. Upon receiving the funds from the IRS, the Trustee shall distribute the $8,137.59 to the County forthwith.

### ORDER ON MOTION FOR REHEARING

An order was entered in this adversary proceeding on September 12, 1994 in which the Court granted summary judgment for the Trustee as against Escambia County and the Internal Revenue Service, and in reconsideration of the claims allowed and disallowed by the Court in its Order of Distribution entered on April 9, 1991 this Court ordered the Internal Revenue Service to re-

26. The Court finds no fault with the IRS for retaining the funds. At argument, counsel for the IRS explained, and this Court agrees, that because the amount the IRS received was not sufficient to satisfy its claimed amount, the internal workings of the IRS did not recognize that the IRS had in fact been overpaid. Considering the size of the organization and the volume of

business it conducts daily, this Court cannot find fault.

Because the County is not entitled to receive interest on these funds, the IRS may keep whatever interest accrued on the funds. To allow the Trustee to receive such interest would allow him to benefit from this unfortunate situation.

turn to the Trustee $8,137.59 of the funds paid to it by the Trustee, which amount was the amount of the claim filed by the County. This amount included the principal amount for 1987 personal property taxes due the County plus interest. The Court ordered the Trustee, once he had received the repayment from the IRS, to pay $8,137.59 to the County.

On September 22, 1994 the County filed a Motion and Memorandum in Support of Motion of Escambia County Tax Collector for Rehearing and Request for Hearing.[1] In its motion for rehearing the County requests the Court to reconsider its memorandum opinion and order of September 12, 1994 and to find that:

1. The County is entitled to interest on its claim in addition to that calculated in its proof of claim;[2]

2. The Trustee acted in a negligent manner;[3] and that,

3. The County did not receive notice of the Trustee's Proposed Distribution of the assets of this case or the United States Trustee's approval of that proposal, and did not receive notice of or a copy of the Court's April 9, 1991 Order Directing Disbursement of Funds.[4]

The above matters must be addressed in relation to the Court's April 9, 1991 Order Directing Disbursement of Funds. There are significant differences in the answers to these questions when the questions are considered in relation to interest to be paid for

the period before that Court order and for interest to be paid for the period following the order.

## I. PRE–DISTRIBUTION INTEREST

### A. Item 1

■ As to Item 1, the County argues that it is entitled to interest on its claim under 11 U.S.C. § 506 as interpreted by the Supreme Court of the United States in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) because it is an oversecured creditor. This Court agrees. The facts, law and equities existing in this case dictate that these parties be placed in the positions they should have held if the Trustee's distribution of assets had been correct. That was this Court's intent. In conformity with this Court's Memorandum Opinion on Motion for Summary Judgment entered on September 12, 1994 and in consideration of the County's request for additional interest, this Court finds that the County is entitled to interest on its claim.

### 1. Applicable Rate of Interest

■ While all the parties do not agree that the County is entitled to interest on its claim, they do agree that if interest is allowed, that it should be calculated according to a statutory rate rather than a market rate.[5] The County argues for the rate pro-

---

1. The request for hearing portion of the motion was granted with the holding of a telephone conference on October 6, 1994 at which Mr. Philip A. Bates, attorney for the County, Ms. Carol Koehler Ide, attorney for the IRS and Mr. Cory E. Peterson, attorney for the Trustee, appeared. The proceeding was duly recorded by the Clerk of Court for the Northern District of Alabama. The parties were given opportunities to submit written arguments.

2. In its proof of claim filed July 25, 1988, the County requested $8,137.59, an amount including interest. In its prayer for relief in its complaint against the Trustee, the County requested "judgment ... for damages, pre-judgment interest, and the costs of this action."

3. The County argues that the Trustee failed to preserve and protect property of the estate which was subject to the County's lien.

4. The County argues that the Court and the Trustee failed to give notice of, schedule hearings on or distribute copies of pertinent documents.

5. The calculation of interest rates in Chapter 11 cases, unlike Chapter 7 cases, requires the application of a market rate of interest, at least for the calculation of present value in section 1129(a)(9)(C). *See, United States v. Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir. 1983). In that case the circuit court said, "Consequently, we hold that the interest rate to be used in computing present value of a claim pursuant to § 1129(a)(9)(C) should be the current market rate without any deduction for 'rehabilitation aspects' of the plan." *Id.* at 652–53 (footnote omitted). The court rejected the application of 26 U.S.C. § 6621 as the sole source for interest rate calculation. *See also, In re General Development Corp.*, 135 B.R. 1008 (Bankr.S.D.Fla. 1991). Relying on *Southern States* the bankruptcy court in *General Development* held that the

**650**

vided for in 197.172(3) Fla.Stat. The IRS argues for the rate provided for in 26 U.S.C. § 6621(a)(1). The Trustee argues for the rate provided for in 28 U.S.C. § 1961. While some of these rates are determined with a market rate variable, they are essentially statutory.

Section 1961 in Title 28 applies to interest on a "money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). While the Trustee correctly argues that some courts have applied section 1961 to bankruptcy cases, it appears from the cases cited by the Trustee that where section 1961 has been applied to bankruptcy cases, the circumstances involved either money judgments, something that does not exist in this case, or were Chapter 11 cases or were both. The cases cited by the Trustee are similar to *United States v. Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir. 1983), which is not applicable.

 From the limited Chapter 7 cases discussing interest on distributions, this Court surmises that the correct interest rate to apply in these situations is the statutory rate of the statute associated with the party making the claim for interest. For example, if the IRS were the claimant, 26 U.S.C. 6621(a)(1) would apply. If the County were the claimant, the Florida statute would apply. There is precedent for this hypothesis. In *United States v. Robinson*, 929 F.2d 1 (1st Cir.1991), an involuntary petition was filed against the debtor in 1970. In addition to a wage claimant, there were two governmental claimants. The circuit court held that the

appropriate interest rate for the calculation of interest on claims in a Chapter 11 case for purposes of § 1129(b)(2)(A)(i)(II) was the market rate. Interestingly in that case the parties objecting to the debtor's plan were Florida county tax collectors seeking the statutory 18% rate payable on delinquent property taxes. Even more interesting however is that the debtor stipulated that the interest rate applicable to the taxes for the period from the filing date of the case to the effective date of the plan (the pre-confirmation period) should be the statutory rate. This period is attuned to the calculation of interest on a claim for a pre-distribution period in a Chapter 7 case, unlike the post-confirmation period of primary concern in *Southern States* and *General Development*.

6. The court characterized this case as a "no asset" case. This Court is unable to determine

interest due on the IRS claim should be calculated under 26 U.S.C. § 6621 and that of the Commonwealth of Massachusetts under state law.[6] The pertinent part of the bankruptcy court's order of final distribution stated:

[T]he I.R.S. and Commonwealth through its Department of Revenue and Division of Employment Security (the "Commonwealth") are entitled to be paid next. The I.R.S. is entitled to postpetition interest on its priority claim, at the rate specified in 26 U.S.C. § 6621 (*the rate provided by law for federal tax claims*) on a pro rata basis with the Commonwealth, for the period May 22, 1970 (the petition filing date) to date of payment. The Commonwealth is entitled to postpetition interest at the rate set forth in MASS.ANN.LAWS ch. 62c, § 32 (Law Co-op.1978 & Supp.1989) (*the rate applicable to overdue taxes*) on its priority claims on a pro rata basis with the I.R.S. from May 22, 1970 until paid.

*United States v. Robinson* at 2 (emphasis added).

The pertinent part of the circuit court's conclusion reads:

The I.R.S. shall be paid post-petition interest pursuant to *26 U.S.C. § 6621* on its total tax claims, lien and non-lien. Such payment shall be made on a pro-rata basis with the post-petition interest due the Commonwealth under *Mass.Gen.L.Ann. ch. 62 § 32 on its tax claims.*

with absolute certainty that this case would, if filed today, be considered a Chapter 7 case and thus stand for the proposition that it is cited for, however even if it could be characterized as a Chapter 11 matter, the calculation of interest was one made for the immediate payment of claims, rather than one for purposes of paying claims pursuant to a confirmed plan. After the trustee was awarded $750,000.00 from a pending lawsuit, the "asset" characteristic of the case changed. Because this case was over 20 years old, the Court retroactively applied the Bankruptcy Act of 1898, rather than *Ron Pair*, to determine whether the IRS, an oversecured creditor, should receive post-petition interest, but applied current statutes to decide what rate of interest would apply.

*Id.* at 6 (emphasis added).[7] Because most cases addressing the rate of interest question are Chapter 11 cases involving "current value" questions, those cases are not helpful. There is little question however that a statutory rate should be applied. As to which one, this Court finds that the statute that should apply in this case to determine the County's pre-distribution interest on its personal property tax claim is § 197.172(3) Fla. Stat., and the applicable rate is the 18% rate provided for in that statute.[8]

### 2. Calculation

If the County had received its principal and interest on the date of distribution, the County would have been entitled to interest at the state statutory rate of 18%. If the Trustee's distribution had been correct, principal and interest would have equaled $11,996.23. That amount includes principal of $7,787.17 and interest for the 36 months from April 1, 1988 through March 31, 1991 and nine days of April 1991 at a rate of $116.81 per month, which rate is calculated on the principal of $7,787.17 at 18% simple interest per year.

Also in conformity with this Court's opinion of September 12, 1994, as the IRS was paid an amount in excess of the amount it should have received if the Trustee's distribution had been correct, this Court finds that the IRS should return $11,995.87 to the Trustee for distribution to the County.[9]

### B. Item 2

■ As to Item 2, this Court found that it was not necessary to determine whether the Trustee acted in a negligent manner in order to decide the issues in this matter. As to the issue of the amount of the County's claim for pre-distribution interest, this Court will not reconsider the issue of the Trustee's negligence. The County, by the order entered this day, has received all that it would have received if a proper distribution had been made.

### C. Item 3

■ As to Item 3, this Court found that it was not necessary to determine whether the County received notice of the Trustee's Proposed Distribution of the assets of this case or of the United States Trustee's approval of that proposal, or received notice of or a copy of the Court's April 9, 1991 Order of Distribution in order to decide the issues in this matter. As to the issue of the amount of the County's claim for pre-distribution interest, this Court will not reconsider the issue of notice. The County, by the order entered

---

7. *See also, In re LaPiana,* 100 B.R. 998 (N.D.Ill. 1989), aff'd 909 F.2d 221 (7th Cir.1990) (in a Chapter 11 proceeding converted to a Chapter 7 case, the IRS is entitled to post-petition interest on its oversecured tax claim calculated at a rate fixed by 26 U.S.C. § 6621); *Matter of Isley,* 104 B.R. 673 (Bankr.D.N.J.1989) (the trustee should apply the statutory rate of interest allowed by N.J.S.A. 54:4–67 when calculating interest due New Jersey municipalities on tax liens).

8. One court has held that the real estate portions (subsections (1) and (2)) of § 197.172 Fla.Stat. are in the nature of penalties and therefore may not be used as an interest rate for calculating interest on tax liabilities. *In re Koger Properties, Inc.,* 172 B.R. 351 (Bankr.M.D.Fla.1994). As that case explains, some courts have held that where an interest rate is maintained in order to penalize a taxpayer, rather than for the purpose of calculating interest to the government, the rate may not be used. While the *Koger* Court found that the 18% interest rate was too high, as the County astutely writes after analyzing the history of section 197.172, "Whether the rate appears to be high or low depends on a fluctuating market rate." Response to Defendants' Supplemental

Memorandum at 16. In comparison to *Koger,* the instant case is dramatically different. *Koger* involved real property taxes. If one uses current real estate mortgage rates as a guide, 18% may seem excessive. The instant case involves personal property taxes however. Subsection (3) of section 197.172, not subsections (1) and (2) is applicable. While there was no evidence presented on the question, common sense, and the credit card in this judge's pocket, demonstrates that 18% interest on personal loans is not, although some may wish differently, a legally unreasonable rate and consequently a penalty. The real estate portions of section 197.172 may be a penalty. That issue is not before this Court. But for purposes of calculating pre-distribution interest due the County on a claim for personal property ad valorem taxes, this Court finds that section 197.172(3) Fla.Stat. is not a penalty.

9. In its *Response by the United States of America to Briefs on Rehearing* the IRS disagrees with the Court's conclusions of law and the applicable interest rate the Court has applied, but concurs in the general holding that the IRS should return a portion of the funds it received from the Trustee's distribution.

this day, has received all that it would have received if a proper distribution had been made.

## II. POST–DISTRIBUTION INTEREST

■ In the September 12, 1994 memorandum this Court noted, "The County should receive no interest here because 22 months passed between the admitted time the County discovered the inaccurate distribution in June 1991 and the time it filed its complaint in April 1993, as compared to the two months that passed between the date of the Order for Distribution, April 9, 1991, and the June 1991 discovery of the inaccurate distribution." As to the question of this post-petition interest, there are genuine issues as to material facts which are not ripe for summary judgment. Because the County claims interest for a time beyond the time of the Trustee's distribution of the assets in this case, the factual matters raised in the County's motion for rehearing must be explored.[10]

### A. Items 1, 2 and 3

■ As to Items 1, 2 and 3, the County maintains that the failure of the Trustee to pay its claim was due to the negligence of the Trustee and the failure of the Court and the Trustee to comply with notice and hearing procedures of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. The

County did not present evidence on these issues but as stated in its motion for rehearing it is prepared to do so. If these matters are to be resolved in this case the parties must consider the factual basis of the Court's Order of Distribution, the general, as well as case specific, practices and procedures of the Clerk of Court, and the policies and procedures of the United States Trustee and how and whether those practices were followed in this case and to what extent they impact the issues before this Court.[11]

### B. Summary Judgment

None of the above issues, factual or legal, relate to either the claim of the County or the claim of the IRS as to what those parties should have received through a distribution of assets in this case. They do however relate to the Court's actions, the United States Trustee's actions and the Trustee's actions as those actions affect the County's claim to interest after the date of distribution and are consequently not ripe for summary judgment.

It is therefore **ORDERED, ADJUDGED AND DECREED,** that:

1. This Court's Order of September 12, 1994 is **VACATED** to the extent that it is in conflict with this order.

2. Summary judgment for the Trustee, as against the County and the IRS, is

---

**10.** This Court does not need to look beyond court records to recognize that there are genuine issues as to material facts which must be addressed before a determination is made on post-distribution interest. The County claims that copies of the Court's April 9, 1991 Order were not sent to creditors. The Court's docket entry for that order reads, "ORDR DIRCTING DISBRSMNT of Funds cc: Dbtr, Attys of Recrd, IRS (EOD 4/9/91) rh". What copies, if any, were sent and to whom are questions of fact that are of course material to this Court's analysis.

These questions and others were raised at the earlier hearing, but because the legal issues to be decided, as this Court framed them, were not dependant on facts in dispute, the Court's authority to decide those issue in the context of a motion for summary judgment was not destroyed. The Court may not however decide the question of post-distribution interest on the motion for summary judgment because that question is directly dependent on facts in dispute. These post-distribution interest issues did not impact the County's claim to its 1987 taxes or to

any pre-distribution interest it was entitled to, and consequently the determination of those issues was not necessary to decide the issue of pre-distribution interest.

**11.** If facts are presented to decide the issues presented by the County, this Court may need to consider: (1) what immunity is afforded the Trustee because of his relationship to the Court and his reliance on the policies and procedures of the United States Trustee and his reliance, as well as the Court's reliance, on the audit of this case by the United States Trustee; (2) what standard is appropriate to judge the Trustee's actions where those actions appear to be in agreement with the policies and procedures of the United States Trustee and which actions were in agreement with an audit of the proposed distribution by the United States Trustee; and (3) whether the County is estopped from claiming interest beyond the date of distribution because it was aware of the incorrect distribution in June 1991 but did not address the Court with this error before the Court ordered the closing of this case in July 1991.

**GRANTED** to the extent of the County's claim to its 1987 taxes and pre-distribution interest thereon.

3. The County's claim of $8,137.59 is reconsidered and allowed in the amount of $11,996.23.

4. The IRS' claim of $156,854.51 is allowed but the Trustee's distribution to the IRS of $78,705.83 should be reduced by $11,996.23.

5. The IRS shall return $11,996.23 to the Trustee within 45 days of the date of this order.

6. Upon receiving the funds from the IRS, the Trustee shall distribute the $11,996.23 to the County forthwith.

7. Should any party desire an evidentiary hearing on the issue of the County's claim to post-distribution interest, the requesting party must make the **request for an evidentiary hearing** in writing and file it with the Clerk of Court within 10 days from the date of this Order. If no request is made, the Court will consider all matters concluded and this adversary proceeding will be closed. If a request is made, the Clerk of Court is directed to schedule appropriate hearings at the convenience of the parties and the Court.